38074. FIRST NATIONAL BANK OF DeKALB COUNTY v. NATIONAL BANK OF GEORGIA et al.

GREGORY, Justice

The First National Bank of DeKalb County (First DeKalb) filed suit against The National Bank of Georgia (NBG), Centennial Equities Corporation and two individuals (CEC) seeking specific performance of a sale contract together with declaratory and injunctive relief. The trial court granted summary judgment to NBG, holding that a condition to performance had not occurred. We reverse. This is the second appearance of this case before this court. *First Nat. Bank v. Centennial Equities Corp.,* 245 Ga. 121 (263 SE2d 155) (1980).

On April 21, 1978 NBG entered into a contract with First DeKalb wherein NBG agreed to sell and First DeKalb agreed to buy a bank building and its contents located on the premises of Perimeter Shopping Mall in DeKalb County.

The sale contract provided that the sale was subject to the terms and conditions of an existing ground lease between CEC as lessor and NBG as lessee. The ground lease created a leasehold interest in the land upon which the building was constructed. It provided that the lessee (NBG) could not assign its interest under the lease without the prior written consent of the lessor (CEC). Consent was not to be unreasonably withheld.[1] The sale contract required that First

---

[1] "Lessee may not assign this lease or any interest hereunder nor sublet any interest hereunder without the prior written consent of the Lessor, which prior written consent may not be unreasonably withheld; provided, however, Lessor agrees that Lessee may assign or sublet the premises to any corporation which owns more than 50% of the Lessee's voting stock or interest. Any such assignee shall thereafter have all of the power, authority, rights, duties, obligations and liabilities of the Lessee hereunder."

DeKalb assume all obligations of NBG under the ground lease.

A further provision of the sale contract was that First DeKalb would, within 31 days of the acceptance of the agreement by NBG file an application with the Regional Administrator of National Banks to establish a branch bank. If this application was not answered by the Comptroller of the Currency within 120 days after filing NBG was given the option to terminate the sale contract or extend the time consistent with the circumstances.

On August 29, 1978 NBG informed First DeKalb that the lessor refused to consent to an assignment of the ground lease. September 25, 1978 First DeKalb received the Comptroller's approval of their application to establish a branch bank. First DeKalb informed NBG of the approval the next day. September 27, 1978 NBG declared the contract terminated for two reasons: the refusal of the lessor to consent to assignment of the lease and the failure of the Comptroller to respond to the application for a branch bank within the prescribed time.

On motion of NBG for summary judgment the trial court concluded that the provision in the sale contract regarding the lessor's consent to assignment of the ground lease was a condition precedent to the obligation of NBG to perform. The view taken was that there was no consent and this ended the inquiry. The non-occurrence of this event being a defense, judgment in favor of NBG was granted. The issue of the application for a branch bank was not reached.

(1) The first issue to be resolved is whether the provision in the sale contract regarding the ground lease was a condition precedent or a promise. We find both imbedded therein.

We are instructed by the Restatement of the Law Second, Contracts, § 224 (1981) that: "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." The distinction between contractual promises and conditions is drawn in 3A Corbin on Contracts, § 633 (1960). There is in a promise the expression of an intention that some future performance will be rendered, and assurance of its rendition. Promissory intention is the key ingredient. A condition is merely a fact or an event. There is no assurance or expression of intention in a condition. Corbin suggests two questions to be posed, an affirmative answer to the first identifying a promise and to the second a condition.

(1) "Was this expression intended to be an assurance by one party to the other that some performance by the first would be rendered in the future and that the other could rely upon it?"

(2) "Was this expression intended to make the duty of one party

conditional and dependent upon some performance by the other (or on some other fact or event)?"

The operative language in the sale contract does not speak of assignment. Instead it provides that the sale is "subject to" the terms of the ground lease.[2] The operative language does provide that First DeKalb "assumes all obligations" as "ground lessee." This together with the circumstance that the building being purchased was for the operation of a bank by First DeKalb results in the inescapable implication that NBG would assign its rights under the lease to First DeKalb. Is this implied provision a promise or a condition? Forgetting for the moment that the lease contains a restriction on assignability we conclude that asking Corbin's questions identifies the implication as a promise. The implication was not that the sale was to take place on the condition that NBG assign the lease, but there is an assurance that the lease will be assigned as a part of the transaction.

While we find a promise by NBG to assign the ground lease we also observe that the words creating a limitation on assignability found within the ground lease have been incorporated by reference into the sale contract. The promise to assign is itself subject to an express provision that the prior written consent of CEC be obtained. Was this express provision a promise or a condition? Again applying Corbin's questions we conclude it is a condition. There is a lack of promissory intention to be found in these words. More reasonably, the words as incorporated into the sale contract mean that the promise to assign is dependent upon consent being given, a consent which may not be unreasonably withheld. Therefore, the promise to assign carries with it the promise to pursue the consent and obtain it unless it is reasonably withheld. See, Law of Contracts, Calamari and Perillo, § 144 (1970). If it is reasonably withheld a condition to performance has not been met and NBG has a defense. Otherwise, there is a breach of the promise of NBG to assign. There are issues of

---

[2] "This sale is subject to the terms and conditions of that certain original lease dated November 24, 1970 by and between P. C. W. Associates, Inc. (predecessor of CEC) as lessor, The National Bank of Georgia as lessee, and Gearon and Company, Inc. as agent, said original lease having been amended subsequently on June 2, 1971, but in substance said lease and initial modification presently remains in full force and effect. The subject property is further subject to a pre-existing lease originally dated July 1, 1973 with The National Bank of Georgia as sub-lessor and Delta Air Lines as sub-lessee, said sub-lease also being in full force and effect.

"As an additional part of the considerations and the mutual benefits to be derived, Purchaser assumes all obligations of Seller as sub-lessor on the Delta lease and all obligations as ground lessee on the P. C. W. Associates, Inc. All of the terms and conditions of said leases are incorporated herein by reference."

fact to be resolved regarding the foregoing. It was not proper to grant summary judgment. Code Ann. § 81A-156 (c).

(2) The second issue relates to the answer of the Comptroller to First DeKalb's application for a branch bank. The contract used the following language:

"The First National Bank of DeKalb County will, within thirty-one (31) days of the acceptance of this agreement by the National Bank of Georgia, file with the Regional Administrator of National Banks an application to establish a branch . . .

"Recognizing the delays inherent in the procedural steps required by 12 C. F. R. 4 and 12 C. F. R. 5, it has been determined that the Comptroller of the Currency must answer this request within one hundred twenty (120) days after the filing of the aforementioned application, or at the option of the National Bank of Georgia this sale agreement may be terminated instanta [sic] or extended for a specific time period consistent with extenuating circumstances or adoption of such different procedures as the Regional Administrator may adopt . . .

"Upon the issuance of an approval by the Comptroller of the Currency, this sale shall be closed within fifteen (15) days, absent any written restraints from any other regulatory agencies having any authority over this branch approval."

Disputes exist as to what constitutes the date of filing, whether there was an anticipatory repudiation by NBG, and estoppel. We do not reach these disputes, however, because we hold that NBG, in any event, failed to exercise its option to terminate the contract. If we assume the answer of the Comptroller was not timely it is nonetheless undisputed that the answer was ultimately forthcoming. The approval contained in the answer was communicated to NBG and the closing called for by First DeKalb. We construe the meaning of the contract and intention of the parties to be that the option to terminate was to come into being at the expiration of the 120-day period but if unexercised expire no later than upon the issuance of the approval. This follows from the provision that the option given was the right to terminate instanter but once the approval issued the sale was to be closed within 15 days. There was no instanter termination and the attempt to terminate came too late once approval issued.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 6, 1982.

*Oscar N. Persons, Nill V. Toulme, M. H. Blackshear, Jr.,* for

appellant.

*Robert W. Beynart, John L. Latham, Kenneth L. Millwood, W. Lyman Dillon, Michael T. Thornton,* for appellees.