76951. BUDGET CAR SALES v. BODDIFORD et al.
(375 SE2d 632)

BEASLEY, Judge.

Plaintiff Budget appeals from the grant of summary judgment to defendants Boddiford on Budget's suit for $500 due to a stopped check and from the denial of its motion for summary judgment on this claim and on defendants' counterclaim for conversion of their Volkswagen, which counterclaim was left pending.

Mr. and Mrs. Boddiford went to Budget's lot on Saturday, May 10, 1986. They looked at cars and test drove two, including a used 1986 Pontiac Grand Am. They discussed with the saleswoman how much they could get for their trade in, a 1980 Volkswagen, and the price of the Grand Am. After discussions in the saleswoman's office, during which she went back and forth between the sales manager's office and her own, the Boddifords signed a "Buyer's Offer and Purchase Option Contract" which reflected a price for the Grand Am of $13,595, a credit of $3,000 for the VW, and a downpayment of $500, paid by check.

The face of the offer contained the following: "[i]f this order and acceptance is contingent upon the arrangement of financing, the purchaser(s) offer is not accepted and the transaction is not consummated until (a) approved in writing by Dealer and a responsible Bank or Finance Company and (b) all disclosures required by the Federal Consumer Credit Protection Act (Truth in Lending Act) have been given and (c) purchaser(s) have signed an installment Sale Contract."

The offer was signed by sales manager Hafer while the Boddifords were in the saleswoman's office. Thereafter, the Boddifords

went into Hafer's office where he identified each of a stack of documents related to the sale. Copies were given to the Boddifords who, without reading them, signed these documents. Included was a fully completed Sales Contract, reflecting all credit terms and showing Savannah Bank & Trust Company and Budget as creditors. By this point, Budget had run a preliminary credit check on the Boddifords, which was positive.

The Sales Contract stated on the front that buyers acknowledged that the Agreement "may be assigned by us [Budget] to Savannah Bank & Trust Company. . . ." The back of the Contract contained a form "Assignment" for this purpose. The Contract and the Assignment to the Bank were signed by Hafer. A separate document, the Delivery Receipt, was dated and signed by Mr. Boddiford. It stated it was part of "the buyer's order, . . . or retail installment contract" and provided that if "seller is unable to assign this contract within ___ days of the date hereof, this contract shall be null and void and buyer, immediately upon notice by seller, shall do one of the following: 1. purchase the vehicle from seller for the cash price thereof set forth herein, or 2. return the vehicle described herein to seller and pay . . . the cost of repair of any damage occurring to the vehicle . . . ."

The Agreement also contained a clause stating that it "contains the full, final and exclusive statement of the agreement between you and us regarding this conditional sale, and no other promises, agreements or representations regarding this transaction shall be binding upon us unless set forth in this Agreement."

The Boddifords signed over the title to the VW and left with the Grand Am. On Saturday evening, all of the credit figures were sent by a fax machine to the bank. Early Monday morning the bank reviewed the Boddifords' credit and telephoned Budget to tell them it was approved, thereby accepting assignment of the Retail Sales Contract pursuant to the financing agreement then in force between Budget and the bank.

After getting home and reading the documents sometime during the weekend, the Boddifords decided they did not want to purchase the car. On Monday morning, after the bank had acted, they so advised the bank and went back to the dealer, returning the Grand Am and attempting to revoke the contract. Mrs. Boddiford also stopped payment on the $500 check.

The basis for the trial court's order was the conclusion that, pursuant to the Buyer's Offer and Purchase Option Contract, no approval in writing was made by the bank and conveyed to Budget as well as to the Boddifords, so that no contract came into being.

1. What the situation might have been if only the Buyer's Offer and Purchase Option had been signed is not before us, nor was it

before the trial court. See *Frey v. Friendly Motors*, 129 Ga. App. 636 (200 SE2d 467) (1973). The Boddifords and Budget had taken the next step, entering into the Retail Sales Contract which contained not only the price term which had been set out in the Offer, but the financing terms and all other conditions and terms of the contract. The Offer, upon execution of the Contract, was subsumed in it, as reflected in the plain language of the Contract. OCGA §§ 11-2-204; 13-3-1; 13-3-2; 13-2-2 (2); see *Delta Chevrolet v. Wells*, 187 Ga. App. 694, 695 (1) (371 SE2d 250) (1988). Thus the contingencies enumerated in the offer became irrelevant. The seller, not the buyer, had arranged financing and signed the assignment to its bank.

This does not resolve the issue, however, because there was a condition contained in the Contract, that if the seller was unable to assign the contract, it would become null and void.

"Conditions may be precedent or subsequent. A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party. . . ." OCGA § 13-3-4; see *First Nat. Bank &c. v. Nat. Bank of Ga.*, 249 Ga. 216, 218 (290 SE2d 55) (1982); *Douglas v. Langford*, 206 Ga. 864, 870 (59 SE2d 386) (1950); *Crowe, Carter & Assoc. v. Hyde*, 163 Ga. App. 816, 818 (295 SE2d 353) (1982).

The only condition in the Contract was fulfilled on Monday morning when the bank notified Budget that it would accept assignment of the Retail Sales Contract and so step into the shoes of the seller. That was all that was required, since there was no requirement in the Contract and Assignment that such notice be in writing or conveyed to the buyers before it became effective. *First Nat. Bank*, supra; see *Brown v. Morris Real Estate Consultants*, 256 Ga. 269, 270 (1) (347 SE2d 563) (1986); *Panfel v. Boyd*, 186 Ga. App. 214, 220 (3) (367 SE2d 54) (1988); *Maine v. Strange*, 138 Ga. App. 24, 25 (225 SE2d 484) (1976). The Boddifords' desire that the bank not approve their credit and accept the assignment had no legal effect. They were not parties to the assignment agreement, so even if the assignment had been accepted after the Boddifords' visit to the bank, the result would be the same.

Thus, summary judgment was improperly granted to the Boddifords and denied to Budget on its claim for $500.

2. As to the conversion claim concerning the VW given in trade for the Grand Am, the same rationale applies.

The court is directed to enter judgment for Budget on its claim and on the counterclaim of the defendants.

*Judgment reversed and case remanded with direction. Birdsong, C. J., and Banke, P. J., concur.*

Decided November 4, 1988 —
Rehearing denied November 18, 1988 — 

Kent & Barrow, A. Mark Lee, for appellant.

Abbott, Talley & Abbott, Laurie K. Abbott, Anthony H. Abbott, James B. Talley, for appellees.