In the Matter of Thomas Arthur
HANKS, Debtor.

Bankruptcy No. A92–77058–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 5, 1995.

T. Jeffery Lehman, Gray, Gilliland & Gold, P.C., Atlanta, GA, for debtor.

J. Mark Replogle, Marietta, GA, for Thomas–McKinnon Securities, Inc.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion of Chapter 7 Debtor to Reopen Case and Motion for Enforcement of Settlement Agreement, and the Motion of Chapter 7 Debtor to Quash Subpoena, all filed in this case on January 26, 1995, by Thomas Arthur Hanks (hereinafter "Debtor"). By these Motions, the Debtor seeks to reopen his dismissed Chapter 7 case in order to enforce a settlement agreement he allegedly reached with Thomas–McKinnon Securities, Inc. (hereinafter "TMSI"). TMSI opposes these Motions. A hearing was held on March 14, 1995, after which time the Court took these matters under advisement and requested additional briefing. After carefully considering all the facts and legal arguments presented by the parties, the Court will deny these Motions for the reasons set forth below.

## FACTUAL BACKGROUND

The Debtor was formerly employed by TMSI as a financial consultant. At the beginning of his employment, the Debtor received a loan from TMSI, and he executed a promissory note in favor of his employer in the amount of the loan. Aside from establishing a monthly repayment schedule, the note provided that the loan would be immediately forgiven upon the termination of the Debtor's employment, unless such termination was for cause. In September of 1989, TMSI sold its retail brokerage network to Prudential–Bache Securities, Inc. Upon completion of the sale, the Debtor's employment was terminated for reasons other than cause, and as such, his outstanding loan to TMSI was cancelled. Nevertheless, TMSI paid withholding taxes in connection with the forgiveness of the loan and sought reimbursement from the Debtor.

Unfortunately for the Debtor, he was unable to pay TMSI the $35,000.00 necessary to reimburse it for the withholding taxes. As a result, TMSI commenced a civil action against the Debtor in the United States Bankruptcy Court for the Southern District of New York.[1] Due to the Debtor's financial condition and residence away from New York, he failed to secure counsel, file an answer, or appear at trial. The court in New York therefore entered a default judgment against him on September 20, 1992, in the amount of $42,005.34. This judgment added to the Debtor's already severe financial difficulties, and he filed for protection in this Court under Chapter 7 of the Bankruptcy Code on October 20, 1992.

Subsequent to the filing of his bankruptcy petition, the Debtor pursued negotiations with several of his creditors, including TMSI. By letter dated February 10, 1993, TMSI offered to settle its claim against the Debtor for $6,300.00. According to the settlement offer, TMSI expected the Debtor to make thirty equal monthly installments of $210 beginning March 1, 1993, and continuing through August 1, 1995. The offer, however, was subject to the following conditions: (1) the Debtor's acceptance in writing; (2) the voluntary dismissal of the bankruptcy case;

and (3) the failure to make any of the payments would void the agreement and make the Debtor liable for the entire judgment amount. The Debtor, through his counsel, agreed to the offer by letter dated February 12, 1993. In his letter, however, the Debtor suggested that the first payment be made on May 15, 1993, in order to give the Court sufficient time to enter an order of dismissal. The Debtor also asked TMSI to prepare and send the necessary documents for him to sign in order to effectuate the settlement agreement.

Believing a settlement had been reached, the Debtor voluntarily dismissed his Chapter 7 case by consent order dated February 16, 1993. Nevertheless, the Debtor never received any documents from TMSI for him to sign to memorialize the settlement. Moreover, the Debtor never made any payments to TMSI in accordance to the terms of the alleged agreement. As a result, TMSI domesticated its New York judgment against the Debtor seeking to enforce the full amount of the judgment. TMSI also subpoenaed the Debtor for a deposition to conduct postjudgment discovery. The Debtor responded by filing the Motions *sub judice*.

By his Motions, the Debtor argues that the parties entered into an enforceable settlement agreement, and he wants to make the terms of that agreement the enforceable decree of this Court. The Debtor contends that his failure to make any payments in accordance with the agreement is merely a delay in performance. This delay, he argues, amounts only to a breach of a term of the settlement and not to a repudiation of the whole agreement itself. The Debtor also contends that TMSI is in breach of a term of the agreement in that it did not prepare the necessary documents to memorialize the terms of the settlement. TMSI, however, disagrees with the Debtor's contentions. First, TMSI argues that no binding agreement exists as there was no meeting of the minds between the parties as to certain specific terms. Second, assuming that the parties did enter into an agreement, TMSI contends that the Debtor breached it by failing

1. At the time, TMSI itself was a debtor in bankruptcy.

to perform. According to an express term of the alleged agreement, the settlement becomes void should the Debtor fail to make any of the payments. Finally, TMSI argues that this Court does not have subject matter jurisdiction to reopen the Debtor's case and enforce the settlement agreement.[2] For these reasons, TMSI requests that the Court deny the Debtor's Motions.

## DISCUSSION

■ As a preliminary matter, the Court must determine whether it should reopen the Debtor's Chapter 7 case. This question is dependent upon whether the Court has authority to conduct the business the Debtor requests once the case is reopened.[3] Therefore, the specific issue that must be addressed is whether the Court has subject matter jurisdiction to enforce the alleged settlement agreement between the Debtor and TMSI. In view of the Supreme Court decision in *Kokkonen v. Guardian Life Ins. Co.,* —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Court concludes that it does not.

### A. Jurisdiction After Kokkonen

In *Kokkonen,* the Supreme Court addressed the issue of whether a federal district court had jurisdiction to consider a claim of breach of an agreement to settle a suit previously dismissed by that court. The parties in *Kokkonen* were originally involved in a diversity action before the district court. Prior to an adjudication, however, the parties arrived at an agreement to settle all claims. Thereafter, they executed a stipulation and order of dismissal in the federal court. Subsequently, a dispute arose as to one party's obligations under the agreement, so the dis-

trict court entered an order enforcing the agreement. After the Ninth Circuit affirmed, however, the Supreme Court on further appeal unanimously reversed, holding that the lower court had no subject matter jurisdiction to enforce the settlement agreement after the case had been dismissed. In the process, the Court stated as follows:

> The short of the matter is this: The suit involves a claim for breach of a contract, part of the consideration of which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute. The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business. If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. . . . Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.

*Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1677 (emphasis in original). Since the parties did not provide for the enforcement of the settlement agreement by the district court, and no independent basis for federal jurisdiction existed, the Supreme Court found that the district court had no authority to consider the settlement agreement dispute.

■ The procedural facts of this case are virtually identical to the ones before the district court in *Kokkonen.*[4] Specifically, the

---

**2.** The Court raised the issue of jurisdiction *sua sponte* at the March 14, 1995, hearing, and allowed the parties to brief the question. Predictably, the Debtor argued in favor of jurisdiction while TMSI argued against it.

**3.** The Court has the discretion under 11 U.S.C. § 350(b) to reopen a closed bankruptcy case. Nevertheless, it would not be proper to exercise this discretion when the Court does not have jurisdiction over the business to be conducted in the reopened case.

**4.** There is an arguable distinction between *Kokkonen* and this case in that *Kokkonen* discusses jurisdiction of district courts, not bankruptcy courts. Nevertheless, this Court finds that such a distinction is immaterial with regards to the issue of subject matter jurisdiction. The bankruptcy court is a unit of the district court. 28 U.S.C. § 151. As such, a bankruptcy court's subject matter jurisdiction is dependent upon what a district court is authorized to hear. In other words, a bankruptcy court's jurisdiction cannot exceed that of the district court. Therefore, any limitations placed upon district court

Debtor came within the jurisdiction of this federal Court when he filed his Chapter 7 bankruptcy petition. Since TMSI was a judgment creditor, its claim against the Debtor likewise came within this Court's jurisdiction. Prior to the entry of a discharge, however, the parties entered into a settlement agreement, and the Debtor voluntarily dismissed his case. As in *Kokkonen,* a dispute has arisen as to the parties' obligations under the settlement, and the Debtor wants this Court to enforce the agreement. Under *Kokkonen,* this Court can do so under very limited circumstances: (1) ancillary jurisdiction to enforce its own orders; or (2) independent basis for federal jurisdiction. *See Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1677; *see also Sheng v. Starkey Laboratories, Inc.,* 53 F.3d 192, 195 (8th Cir.1995); *Morris v. City of Hobart,* 39 F.3d 1105, 1110–11 (10th Cir.1994); *ALFAB, Inc. v. CNA Fin. Corp.,* 877 F.Supp. 1538, 1540 (M.D.Ala. 1995). The Court will consider these circumstances separately.

### B. Ancillary Jurisdiction

■ Under the doctrine of ancillary jurisdiction, a federal court may assert jurisdiction over claims that are sufficiently related to an action properly within that court's subject matter jurisdiction. JACK H. FRIEDENTHAL, ET AL., CIVIL PROCEDURE § 2.12, at 66 (1985); *see Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1676; *Chesley v. Union Carbide Corp.,* 927 F.2d 60, 64 (2d Cir.1990); *cf. Ram Constr. Co. v. Port Auth. of Allegheny County,* 49 B.R. 363, 366 (W.D.Pa.1985) (utilizing pendent jurisdiction). As the former Fifth Circuit has stated, "a claim is ancillary when it bears a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction." *Revere Copper & Brass Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 714 (5th Cir.1970) (Morgan, J.); *see also Providers Fidelity Life Ins. Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.),* 63 B.R.

670, 673–74 (Bankr.N.D.Ga.1986) (Drake, J.). Nevertheless, *Kokkonen* makes it clear that enforcing a settlement of federal litigation does not automatically come within a court's ancillary jurisdiction. —— U.S. at —— ——, 114 S.Ct. at 1676–77; *see Lucille v. City of Chicago,* 31 F.3d 546, 548 (7th Cir. 1994). Enforcing the settlement agreement may come within a federal court's ancillary jurisdiction only when the dismissal order specifically retains jurisdiction or explicitly incorporates the terms of the agreement. *Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1677; *Lucille,* 31 F.3d at 548. In these situations, ancillary jurisdiction simply applies to allow a federal court to protect and enforce its decrees.

■ Turning to the facts of this case, the Court notes that the order dismissing the Debtor's Chapter 7 case is devoid of any language retaining jurisdiction to enforce settlement agreements. Furthermore, the dismissal order does not incorporate the terms of the agreement. Admittedly, the order does state that "the Debtor has reached settlement agreements with several of his creditors which have significantly changed his financial circumstances." Nevertheless, a mere reference to the existence of a settlement agreement is insufficient to incorporate the terms thereof. *Accord Lucille,* 31 F.3d at 548–49. Therefore, the Court concludes that it does not have ancillary jurisdiction to enforce the alleged settlement agreement between the Debtor and TMSI.[5]

### C. Independent Federal Jurisdiction

■ Federal courts are courts of limited jurisdiction, and they must have a statutory basis, within constitutional limits, in order to exercise their jurisdiction. *Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1675; *Morris,* 39 F.3d at 1111; *W.G. v. Senatore,* 18 F.3d 60, 64 (2d Cir.1994). Bankruptcy courts, as units of the district courts, may exercise jurisdiction based upon the following statutory authorization from Congress:

jurisdiction in *Kokkonen* also restrict bankruptcy courts.

**5.** Even if there were ancillary jurisdiction, the Court would find it proper to decline to exercise

such jurisdiction since it has dismissed the proceeding over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts have original but not exclusive jurisdiction of all civil proceedings *arising under title 11, or arising in or related to cases under title 11.*

28 U.S.C. § 1334(a), (b) (emphasis added).[6] Subsection (a) refers to the bankruptcy case itself which is initiated by the filing of a petition. *Cumberland River Coal Co. v. United States (In re Blue Diamond Coal Co.)*, 163 B.R. 798, 805 (Bankr.E.D.Tenn. 1994). The issue of enforcing the settlement agreement does not come within this meaning. As such, this Court may exercise jurisdiction over this matter only if it arises under the Bankruptcy Code or relates to a case under title 11 within the meaning of subsection (b).

The "arising under" language of section 1334 makes reference to causes of action that are expressly created by the Bankruptcy Code. *Williams v. Shell Oil Co.*, 169 B.R. 684, 688 (S.D.Cal.1994). The matter brought before the Court on the Debtor's Motions does not fit within this definition. Specifically, the Debtor wants this Court to enforce a settlement agreement it reached with TMSI. The issues raised, therefore, are whether a binding agreement exists and, if so, whether there has been a breach of that agreement. These questions sound in general contract principles, which are matters of state law. In fact, the Court notes that all the legal authority presented by the parties on this issue are either state court cases or federal decisions applying state law. In other words, the rights asserted by the parties on this issue are creatures of state law, not the Bankruptcy Code. Therefore, these matters do not come within this Court's "arising under" jurisdiction.

In contrast, a bankruptcy court's "related to" jurisdiction is more broad as it

encompasses claims and proceedings that are not created by the Bankruptcy Code. "Related to" jurisdiction allows a bankruptcy court to consider matters that may have a conceivable effect on the underlying bankruptcy case and estate being administered by the court. *Querner v. Querner (In re Querner)*, 7 F.3d 1199, 1201 (5th Cir.1993). The key, however, is that there be an underlying bankruptcy case. In considering the enforcement of settlement agreements of the nature as the one before the Court, it becomes apparent that they cannot give rise to "related to" jurisdiction. These agreements become enforceable only upon the dismissal of the underlying federal case. In the case *sub judice,* an express condition to the effectiveness of the settlement between the Debtor and TMSI was the dismissal of the Debtor's Chapter 7 case. In order for the agreement to be enforceable, there can be no bankruptcy case. Thus, the enforcement of the settlement agreement cannot have a conceivable effect on the bankruptcy case as no case is in existence at that time.

In order to better illustrate how this matter is not related to a bankruptcy case within the meaning of 28 U.S.C. § 1334(b), consider the effect of this Court's possible rulings should it adjudicate the merits of the Debtor's motion to enforce. Should the Court find in favor of the Debtor and enforce the settlement, the Debtor will be required to make the necessary monthly payments to satisfy a total debt of $6,300. In contrast, should the Court find in favor of TMSI, the Debtor would be liable for the full amount of the original claim and owe over $42,000. These alternative rulings concern purely contractual relations that arise after the dismissal of the bankruptcy case. In no way do they have an effect upon a bankruptcy case or estate that is currently being administered. The mere fact that this settlement arose out of a bankruptcy case does not confer "related to" jurisdiction over the agreement itself. *Cf. Morris*, 39 F.3d at 1111–12 (finding that agreement arising out of Title VII case did not grant federal ques-

---

**6.** While section 1334 makes no reference to bankruptcy courts, district courts may refer their jurisdiction over title 11 cases and proceedings to bankruptcy courts pursuant to 28 U.S.C. § 157(a).

tion jurisdiction over enforcement of agreement). Furthermore, "related to" jurisdiction does not lie in the possibility that the Debtor may be forced to seek bankruptcy protection at a later date should the agreement not be enforced.[7] Therefore, having been unable to find "arising under" or "related to" jurisdiction, the Court concludes that there exists no independent basis for federal bankruptcy court jurisdiction over the Debtor's Motions.[8]

## CONCLUSION

In view of the Supreme Court decision in *Kokkonen v. Guardian Life Ins. Co.*, this Court lacks subject matter jurisdiction to consider the enforcement of the settlement agreement between the Debtor and TMSI. As such, it declines to reopen the Debtor's Chapter 7 case. Accordingly, the Motion of Chapter 7 Debtor to Reopen Case and Motion for Enforcement of Settlement Agreement, and the Motion of Chapter 7 Debtor to Quash Subpoena are hereby **DENIED.**

**IT IS SO ORDERED.**

---

7. At the hearing on March 14, 1995, the Debtor suggested that he would have no alternative but to file another bankruptcy petition if the Court did not enforce the agreement. While it would arguably be easier to consider the matter now instead of forcing the filing of a new bankruptcy case, the ease of handling these issues in this manner does not overcome the limitations in this Court's subject matter jurisdiction.

8. Even if the Court had jurisdiction to consider the substantive contract issues, the Debtor likely would not succeed in obtaining the relief he seeks. Assuming an agreement exists as the Debtor argues (the exchange of letters between the parties seems to constitute an offer and acceptance), the contract probably would remain unenforceable against TMSI. The offer contained an express condition providing that the settlement would be void upon the Debtor's failure to make any payments. It would appear, however, that the Debtor violated the condition by making no payments at all. The failure of this express condition likely operates to nullify the settlement, thereby rendering the agreement unenforceable against TMSI. *See, e.g., First Nat'l Bank of DeKalb County v. National Bank of Georgia,* 249 Ga. 216, 290 S.E.2d 55 (1982).