**In re LASON, INC., et al.**

**No. 01–11488 (MFW).**

United States Bankruptcy Court,
D. Delaware.

Sept. 15, 2004.

Alfred Villoch, III, Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE, Annette Kerlin McBrayer, Epstein, Becker & Green, P.C., Atlanta, GA, Bernard George Conaway, Fox Rothschild LLP, Wilmington, DE, Curtis J. Crowther, Michael R. Nestor, Robert S. Brady, Timothy Edward Lengkeek, Young, Conaway Stargatt & Taylor LLP, Wilmington, DE, for Lason, Inc.

Wendy S. Tien, U.S. Department of Justice, Washington, DC, for United States.

John B. Alfs, Cox, Hodgman & Giarmarco, P.C., Troy, MI, Kevin W. Gibson, Gibsob & Perkins P.C., Media, PA, for defendants.

John K. Sherwood, Lowenstein Sandler, Roseland, NJ, Thomas G. Macauley, Zuckerman and Spaeder LLP, Wilmington, DE, for Official Committee of Unsecured Creditors, Creditor Committee.

Sean A. O'Keefe, Winthrop Couchot Professional Corp., Newport Beach, CA, for Kofax Imaging Products.

## OPINION [1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Motion of the claimant, Dependable Mail Services, Inc.

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant

("Dependable Mail"), for allowance and immediate payment of an administrative expense claim against Lason, Inc. ("the Debtor") in the amount of $72,613.84. The Debtor objected to Dependable Mail's administrative expense claim and claimed a set-off right against Dependable Mail, arguing that, in fact, Dependable Mail owed it $84,851.06. An evidentiary hearing was held on October 31, 2003. For the reasons set forth below, we will grant Dependable Mail's Motion in part.

## I. *FACTUAL BACKGROUND*

Dependable Mail provides mail automation and pre-sorting services to businesses. The commingling of its customers' mail enables Dependable Mail to process the mail at a discounted rate and then pass those savings on to its customers.

In 1999, the Debtor and Dependable Mail agreed that Dependable Mail would provide these mail automation and pre-sorting services to the Debtor. The agreement between the parties provided that the Debtor would pay a set price per unit of mail plus any additional upgrade charges. The agreement also provided free mail pickups from the Debtor's place of business. This agreement was reached after several discussions between Charles K. Smith, the Chief Executive Officer of Dependable Mail, Michael D. Reeves, a Vice President of Dependable Mail and W. Frank Wilson, the Operations Manager of the Debtor's facility, and it was reduced to a writing entitled the Dependable Mail Service, Inc. Agreement ("the Service Agreement"). Although the Service Agreement was to be signed by Smith for Dependable Mail and both Wilson and Allan Wiggins, a Vice President of the Debt-

or, representing the Debtor, both parties performed under the agreement without anyone actually signing the agreement.

Subsequent to reaching this agreement, the parties agreed that the first invoice issued by Dependable Mail (Invoice # 948621 for $20,221.65) [2] would be voided if (1) the Debtor continued to do business with Dependable Mail and (2) the Debtor signed the Service Agreement.

Thereafter, Dependable Mail provided services for the Debtor and issued invoices for those services. The Debtor, however, failed to pay some of the invoices shortly after entering into the Service Agreement. Dependable Mail contacted the Debtor on several occasions in 2000 to ascertain the problems with payment. While the contacts prompted the Debtor to make some payments to Dependable Mail, many invoices continued to go unpaid. Sometime between June and August 2001, during another conversation over delinquent payments, Dependable Mail was advised by the Debtor that it was reorganizing its business operations and that the Debtor would eventually pay Dependable Mail for its services.

In August or September 2001, the Debtor moved its operations from Atlanta to Kennesaw, Georgia. This move increased the distance between Dependable Mail's location and the Debtor's location by 35–40 miles. The Debtor's move also caused it to have problems putting the correct date on its mail. The Debtor asked Dependable Mail to correct these problems. As a result, the parties agreed to modify the Service Agreement whereby the Debtor agreed to pay the increased costs associated with transporting the mail the extra

---

to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

2. This invoice was issued on February 28, 2000, for services rendered for the month of January 2000.

distance, correcting the dates and re-spraying the bar codes on the mail. Thereafter, Dependable Mail continued to provide services to the Debtor. However, at the Debtor's request, Dependable Mail stopped sending invoices to the Debtor by the end of 2001.

Contemporaneously, Dependable Mail and the Debtor entered into a separate oral agreement by which the Debtor was to provide image and data capture services to Dependable Mail. This agreement was reached in conversations involving Smith and Reeves for Dependable Mail and Wilson for the Debtor. In the summer of 2001, the Debtor began providing those services to Dependable Mail and sent invoices at regular intervals. Upon receiving the Debtor's first invoice, Dependable Mail contacted the Debtor to complain about being over-billed. The Debtor agreed to correct the problem, but continued to provide the services until August 2002 without changing the disputed prices. Dependable Mail has yet to pay the Debtor's invoices.

On December 5, 2001, the Debtor, and several affiliates, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Dependable Mail subsequently filed a Motion for Allowance of an Administrative Expense for services performed post-petition under the Service Agreement. It also filed a proof of claim for pre-petition services provided to the Debtor. The Debtor responded that Dependable Mail actually owned it money after set-off of amounts due to the Debtor for work performed for Dependable Mail. An evidentiary hearing was held on October 31, 2003. The matter has been briefed and is ripe for decision.

## II. JURISDICTION

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (C) & (O).

## III. DISCUSSION

### A. Services Agreement

 The "cardinal rule of contract construction" is that a valid contract exists when there is a manifest intent by both parties to bind themselves and that contract shall be enforced as long as no rule of law would be violated. *Rushing v. Gold Kist, Inc.* 256 Ga.App. 115, 567 S.E.2d 384, 387 (2002); *Peterson v. First Clayton Bank & Trust Co.*, 214 Ga.App. 94, 447 S.E.2d 63, 65–66 (1994).[3] Here, there was an oral agreement between the parties that Dependable Mail would provide services to the Debtor. Through their briefs and witnesses, both parties acknowledge that there was an intent to contract and an intent to be bound by the unsigned Services Agreement. In fact, both parties substantially performed according to the terms of the unsigned agreement. Despite the fact that the contract was never signed, the oral agreement between the two parties and their performance under that agreement creates an enforceable contract. The written Services Agreement, though unsigned, is evidence of the terms of the parties' agreement.

### B. Agreement on Extra Charges

#### 1. Permissibility of Modification

 Persons of competent authority can modify a contract if there is an agreement to do so. *Thomas v. Garrett*, 265 Ga. 395, 456 S.E.2d 573, 574–75 (1995). However, there must be new consideration for

---

**3.** The Services Agreement, which both parties intended to govern their relationship, has a choice of law provision stating that Georgia law governs.

the modification. *Ranger Const. Co. v. Robertshaw Controls Co.*, 166 Ga.App. 679, 305 S.E.2d 361, 363 (1983). Here, there is consideration for the alleged modification of the Services Agreement between Dependable Mail and the Debtor. In exchange for increased payments to Dependable Mail, the Debtor received increased services in the form of additional transportation and mail correction services.

### 2. *Authority to Bind the Debtor*

■ The Debtor argues, however, that it is not bound by the modification of the Services Agreement because it was not approved by anyone with actual authority. Dependable Mail's Vice President, Reeves, testified that the modification was agreed to by Wilson, the Debtor's Operations Manager. The Debtor argues that Wilson had neither actual nor apparent authority to modify the Services Agreement on the Debtor's behalf. The Debtor asserts that company policy precluded Wilson, as Operations Manager, from entering into contracts on the Debtor's behalf. It further argues that Dependable Mail was put on notice that Wilson lacked such authority because the Services Agreement required the signatures of both Wilson and Wiggins, a Vice President of the Debtor.

■ A principal-agent relationship is established when a party expressly or implicitly authorizes another to act for him or subsequently ratifies his actions. *Southern Exposition Management Co. v. Genmar*, 250 Ga.App. 702, 551 S.E.2d 830, 832 (2001). A person acting as an agent has the ability to create obligations for the principal to third parties. *Stallings v. Sylvania Ford–Mercury, Inc.* 242 Ga.App. 731, 533 S.E.2d 731, 733 (2000). Whether this relationship has been established and the extent of the authority is a question for the trier of fact. *Southern Exposition*, 551 S.E.2d at 832. The Georgia Courts

have found that a principal-agent relationship can arise under either actual authority or apparent authority. *Dix v. Shadeed*, 261 Ga.App. 145, 581 S.E.2d 747, 748 (2003).

■ While Wilson may have lacked actual authority to modify the agreement, we find that the Debtor's actions gave the impression that Wilson had the apparent authority to modify the agreement. Apparent authority exists when the principal's actions lead a third party to reasonably believe that the person has the authority to bind the principal, and the third party reasonably acts in reliance. *Bresnahan v. Lighthouse Mission, Inc.*, 230 Ga.App. 389, 496 S.E.2d 351, 354 (1998). A finding of apparent authority is permissible even where there is not a manifestation from the principal that the party is, in fact, an agent for the principal. *Id.*

In this case, despite the Debtor's assertion to the contrary, its actions were consistent with the existence of a principal-agent relationship between the Debtor and Wilson. The Debtor used Wilson as one of its primary negotiators in reaching the original agreement between the parties. Moreover, the Debtor was aware that Wilson was negotiating modifications to the Services Agreement since it was Wilson who negotiated with Dependable Mail to void the first invoice under certain conditions. The Debtor was aware of the agreement to void the first Dependable Mail invoice and, in fact, seeks to enforce that modification. In so doing, the Debtor admits that Wilson had the authority to modify the Services Agreement and to bind the Debtor to those modifications.

Additionally, it was Wilson who negotiated for the Debtor the subsequent agreement by which the Debtor was to provide services to Dependable Mail. The Debtor

does not dispute his authority to do so in that instance either.

Finally, there is nothing in the record to suggest that the Debtor informed Dependable Mail that, despite Wilson's apparent authority to modify some portions of the Services Agreement, he lacked the authority to modify provisions dealing with additional transportation and correction costs. Whether or not Wilson had actual authority, the Debtor permitted him to act on its behalf in several related dealings. Therefore, we conclude that Dependable Mail reasonably believed that Wilson was an agent of the Debtor with authority to agree to the additional transportation and correction costs.

### 3. *Terms of the Modification*

Even if Wilson had the authority to modify the Services Agreement, however, the Debtor argues that the parties did not agree to extra charges for transportation and mail date correction.

In weighing the evidence presented at the hearing, we find that Dependable Mail presented the more credible and reliable evidence of the parties' agreement on this point. Dependable Mail's witness, Reeves, had firsthand knowledge of conversations with Wilson in which the Services Agreement was modified to include the increased services and costs. That testimony was not refuted by the Debtor during the hearing. Instead, the Debtor presented the testimony of James Reynolds, the Debtor's accountant, who did not have firsthand knowledge of the conversations between Reeves and Wilson. In fact, Reynolds had not even discussed the matter with Wilson prior to his testimony. Instead, Reynolds' testimony was based largely on the fact that he could not find any documentation of this agreement during his audit of the Debtor's books and that the timing of the issuance of the invoices was "suspicious."

His testimony, however, does little to determine the actual terms agreed upon during the conversations between Reeves and Wilson. Therefore, we accept Reeves' testimony as credible and reliable. Consequently, we conclude that the parties agreed to the increased transportation and mail correction charges.

Accordingly, Dependable Mail is entitled to payment for the extra costs associated with transportation and date corrections as reflected on its invoices per the oral modification to the Services Agreement negotiated by Reeves and Wilson.

### C. *Agreement to Void Invoice # 948621*

■ The Debtor argues that invoice # 948621 from Dependable Mail should be voided pursuant to the agreement between Wilson and Reeves. That agreement provided that the invoice would be voided if (1) the Debtor continued to do business with Dependable Mail and (2) the Debtor signed the agreement. The Debtor argues that although it did not sign the contract, Dependable Mail waived its right to collect the invoice because it did not attempt to enforce the condition sooner. Dependable Mail argues, however, that the agreement was clear and, since the Debtor did not meet the second condition, the invoice is still enforceable.

■ A condition is an event which is not certain to occur but must occur before performance is due. *First National Bank of DeKalb County v. National Bank of Georgia*, 249 Ga. 216, 290 S.E.2d 55, 57 (1982). An agreement is not enforceable by either party if a condition to that agreement has not been met. *Lee v. Green Land Co., Inc.*, 245 Ga.App. 558, 538 S.E.2d 189, 192 (2000).

Here, both parties agreed that invoice # 948621 would be void if the two condi-

tions were met. However, the second condition (that Debtor sign the contract) clearly was not met. The Debtor's argument that Dependable Mail waived this condition because it did not attempt collection until now is unconvincing. Dependable Mail did not attempt collection on any of the Dependable Mail invoices, and the Debtor correctly does not assert that Dependable Mail waived its right to get paid for those invoices. Moreover, none of Dependable Mail's actions manifested an intent to waive the condition attached to this invoice.

The Debtor further argues that the condition is void because there was a provision in the Service Agreement that permitted rescission on sixty (60) days notice. Consequently, the Debtor argues that Dependable Mail's assertion that it wanted to have a signed contract to bind the parties was incorrect, thus weakening the effect of the condition. We also find this argument unavailing. Whether the condition was as effective as Dependable Mail intended it to be is immaterial to whether the condition was valid and enforceable. There was still a condition, and that condition had to be met before Dependable Mail was obligated to void the invoice. Therefore, we conclude that invoice # 948621 is still due by the Debtor.

### D. *Improper Classification of Dependable Invoices*

■■■■ A claim is entitled to administrative expense claim status under section 503(b) if services were performed post-petition which provided a benefit to the bankruptcy estate. *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 532–533 (3d Cir.1999). Here, the Debtor does not contest the fact that the Dependable Mail performed post-petition services which conferred a benefit on the estate. Therefore, Dependable Mail's post-petition

claim is a valid administrative expense claim.

The Debtor contends, however, that Dependable Mail failed to properly classify its invoices which totaled $324,841.47.

We agree with the Debtor. Invoices totaling $253,223.90 were purported to be for pre-petition services and invoices totaling $72,613.84 were purported to be for post-petition services. Invoice # 991995 for $994.28 and invoice # 991996 for $996.17 were listed as post-petition services. On closer examination, however, those invoices, show that they were, in fact, for pre-petition services.

■■■ Additionally, invoice # 991988 for $11,447.94 was also listed by Dependable Mail as a post-petition expense. However, the services for that invoice were performed between December 3 and 7, 2001, which straddles the bankruptcy filing date. The burden of proof is on the claimant to show that the claim is entitled to administrative expensive treatment. *In re Smith Corona Corp.*, 210 B.R. 243, 245 (Bankr. D.Del.1997) (citing *In re Continental Airlines*, 146 B.R. 520, 526 (Bankr.D.Del. 1992)). Here, Dependable Mail failed to provide any evidence that invoice # 991988, or any portion thereof, was for post-petition services that would entitle the claim to administrative status. As such, we will classify it as a pre-petition claim.

Accordingly, we find that Dependable Mail's pre-petition invoices total $266,662.29 and post-petition invoices total $59,175.06.

### E. *Failure to Give Credit for Payments Made*

The Debtor also asserts that Dependable Mail failed to credit the Debtor for payments that it made. At the hearing, through cancelled checks made out to De-

pendable Mail and through the attached stubs, the Debtor presented credible evidence that several of the invoices were, in fact, already paid in whole or in part. The evidence was convincing and was not refuted by Dependable Mail. Therefore, we find that Dependable Mail did not properly credit the Debtor for those payments. Therefore, Dependable Mail's pre-petition claim should be reduced by that amount.

After reduction for payments made, we find that Dependable Mail's valid pre-petition claim totals $237,748.65 and its valid post-petition claim totals $59,175.06.

### F. Right to Set-off

 Georgia state law permits set-off when two parties mutually owe a debt. Ga.Code Ann., § 13–7–1 (2004). This right to set-off is preserved by section 553 of the Bankruptcy Code. 11 U.S.C. § 553. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Both parties agree that the Debtor has a set-off right for the services it performed for Dependable Mail. Moreover, Dependable Mail concedes that it has not paid the Debtor for the services it provided. The dispute is over the amount of set-off to which the Debtor is entitled.

The Debtor, through Reynolds' testimony, contends that its invoices accurately reflect the parties' agreement that the Debtor would charge varying rates depending on the size of the paper. Dependable Mail contends that the Debtor's invoices are for more than the negotiated price. Dependable Mail's witness, Reeves, testified that the parties agreed to one flat rate of $.105 per page (except for inserts which would be charged at a rate of $.08). Thus, Reeves testified that all entries for $.16 and $.20 on the Debtor's invoices

should have been $.105 per their agreement.

As was the case with the Services Agreement, Reynolds also was not present during any of the meetings or conversations in which the Debtor's services agreement was negotiated. His belief that the Debtor's invoices accurately reflect the agreement is based solely on his review of the Debtor's records and past business practices. It is not, however, based on firsthand knowledge or even on conversations with any of the parties involved.

 In contrast, Reeves testified that he and Wilson verbally agreed that the Debtor would charge a flat rate of $.105 per unit. That testimony was not contradicted by anyone else who was privy to the conversations that formed the basis of the agreement. Therefore, we find Reeves' testimony more reliable and credible on this matter. Accordingly, we find that the agreement between Dependable Mail and the Debtor was the Debtor would provide services at a flat rate of $.105 per page and not varying rates depending on the size of the page. Therefore, while the Debtor does have the right to set-off its invoices against Dependable Mail's invoices, the Debtor's invoices must be corrected before the set-off right is exercised.

 The Debtor also seeks to include invoice # 303 as part of its asserted set-off rights. However, the Debtor did not produce that invoice. Instead, the only evidence of invoice # 303 produced at trial is a copy of a "screen shot." [4] Dependable Mail argues, however, that invoice # 303 should not be included because the Debtor failed to provide the actual invoice.

---

4. The "screen shot" was a copy of a computer screen image which showed the total amount due for several invoices. However, the image showed neither a breakdown of services nor a breakdown of rates charged for those services.

■ The burden of proof is on the party asserting the right to set-off. *See, e.g., In re Tower Environmental, Inc.*, 217 B.R. 933, 937 (Bankr.M.D.Fla.1997); *In re Kennedy Mortg. Co.*, 23 B.R. 466, 471 (Bankr.N.J.1982). The Debtor has failed to meet its burden with respect to invoice # 303. Specifically, the "screen shot" does not provide any detail of the services rendered or prices charged for those services.

Therefore, it provides insufficient information to enable this Court to calculate the proper amount of set-off rights. Consequently, we conclude that the Debtor does not have set-off rights for that invoice and is only entitled to set-off those invoices that it produced at the hearing. Those invoices will be reduced as follows to reflect the correct prices for the services rendered:

| Invoice Number | Asserted Set-off Right | Corrected Set-off Right after Reduction (including sales tax) |
|---|---|---|
| INV000187 | $33,308.09 | $19,117.19 |
| INV000271 | $12,742.77 | $19,746.63 (credit $3,258.97) [5] |
| INVMRC000331 | $23,266.03 | $12,740.40 |
| INVMRC000381 | $ 6,942.78 | $ 4,722.48 |
| INVMRC000428 | $57,695.27 | $29,181.46 |
| INVMRC000520 | $ 2,201.30 | $ 2,201.30 |
| INVMRC000567 | $31,523.57 | $17,618.11 |
| INVMRC000595 | $ 3,239.97 | $ 2,207.94 |
| INVMRC000676 | $29,273.28 | $16,157.74 |

Accordingly, the Debtor's total pre-petition set-off right is $100,687.65. Applying the Debtor's pre-petition set-off claim against Dependable Mail's pre-petition claim of $237,748.65 results in an allowable pre-petition claim of Dependable Mail totaling $137,061.00.

The Debtor's post-petition invoices will similarly be reduced as follows:

| Invoice Number | Asserted Set-off Right | Corrected Set-off Right after Reduction (including sales tax) |
|---|---|---|
| INVMRC000725 | $2,449.32 | $ 1,675.97 |
| INVMRC000783 | $27,330.95 | $14,750.04 |
| INVMRC000824 | $ 1,233.00 | $ 839.89 |
| INVMRC000893 | $ 3,082.51 | $ 2,317.87 |
| INVMRC000989 | $ 122.08 | $ 122.08 |

Accordingly, the Debtor's total post-petition set-off claim is $19,705.85. Applying the Debtor's post-petition set-off claim against Dependable Mail's post-petition claim of $59,175.06 results in an allowable post-petition claim of Dependable Mail totaling $39,469.21.

### IV. CONCLUSION

For the reasons set forth above, after the Debtor's right to set-off for its unpaid invoices, we conclude that Dependable Mail has a pre-petition claim in the amount of $137,061.00 and a post-petition administrative claim in the amount of $39,469.21.

**5.** Dependable Mail previously paid $23,005.60 for this invoice. Therefore, Dependable Mail should receive a credit of $3,258.97 for this invoice.

We will grant Dependable Mail's Motion to that extent.

An appropriate order is attached.

### ORDER

AND NOW, this 15th day of **SEP-TEMBER,** 2004, upon consideration of the Motion Dependable Mail Services, Inc. ("Dependable Mail") for allowance of and immediate payment of administrative expenses, and of its proof of claim and the response of Lason, Inc., for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** Dependable Mail's Motion for allowance of administrative expense is **GRANTED** in part; and it is further

**ORDERED** that Dependable Mail is allowed an administrative claim in the amount of $39,469.21 for post-petition services provided to the Debtor; and it is further

**ORDERED** that Dependable Mail is allowed a pre-petition claim in the amount of $137,061.00 for services provided to the Debtor pre-petition.