A03A2095. VININGS JUBILEE PARTNERS, LTD. v. VININGS DINING, INC.
(596 SE2d 209)

MIKELL, Judge.

We granted Vinings Jubilee Partners, Ltd.'s ("the landlord") application for interlocutory appeal from the trial court's order

---

[11] *Aldridge v. State*, 158 Ga. App. 719, 722 (4) (282 SE2d 189) (1981).
[12] *Moore v. State*, 250 Ga. App. 75, 79 (4) (550 SE2d 667) (2001).

denying its request for a writ of possession. Finding that the court was required to grant the writ pursuant to OCGA § 44-7-54 (b), we reverse.

The landlord and the predecessor in interest to the current tenant, Vinings Dining, Inc. d/b/a Garrison's, entered into a commercial, 15-year lease in 1998. The lease requires the tenant to pay a minimum guaranteed annual rental ("MGAR") in 12 equal monthly installments, with payment due on the first of each month. In addition, the lease obligates the tenant to pay as annual rent a sum equal to five and one-half percent of the amount by which its gross sales exceed the "breakpoint amount," a complex calculation at issue in this case. The annual percentage rental must be paid "on or before the 45th day following the end of each calendar year." In the event that the tenant fails to pay any money obligation "when such payment is due and payable and which continues for three (3) days after receipt of written notice thereof[,]" the landlord may terminate the lease and take possession of the premises.

On October 22, 2002, the landlord filed the underlying dispossessory action, seeking past due rent of $12,666.42, rent accruing up to date of judgment or vacancy in the amount of $11,480.35 per month, and litigation expenses. The tenant answered and counterclaimed, contending, inter alia, that it had tendered all amounts due, but that the landlord had wrongfully refused the tender.

The tenant paid MGAR into court on November 19, 2002, December 3, 2002, January 2, 2003, February 5, 2003, and March 7, 2003.[1] According to the lease, the 2002 percentage rental was due on February 14, 2003. The tenant made a partial payment of $26,000 on February 19. On February 25, the landlord moved for a writ of possession and notified the tenant that a late fee was due on the percentage rental. On March 4, the landlord notified the tenant that, due to its failure to pay the percentage rental in full within three days after receipt of notice of the insufficiency, the landlord had decided to terminate the lease and demand possession of the premises. The letter recited that the tenant had been notified on February 18 that the payment was due. The tenant acknowledged that it had miscalculated the amount due and deposited an additional $4,323.31 in the court registry on March 12.

A hearing was held on March 18. Mike Hammer, president of Pace Properties, which manages the landlord's interests, testified that the tenant had reported its 2002 gross sales on January 10, 2003.

---

[1] The tenant paid sums for common area maintenance, taxes, and utilities, and the landlord disputed the timeliness of those as well. However, it is not necessary to address those issues to resolve this appeal.

According to Hammer's calculations, which were based on the figures reported by the tenant, the tenant owed $37,944.54 for the 2002 percentage rental. However, the tenant had paid only $30,323.31, leaving a deficit of $7,621.23.

Jeffrey Landau, the tenant's president, testified that the figures reported by his bookkeeper were incorrect because they included $138,558 in complimentary food and beverages that were given to patrons. Landau further testified that he interpreted the term "gross sales" to exclude the value of the complimentary items. Finally, Landau testified that the partial payment made on February 19 was a "good faith guesstimate," that he fell dramatically behind in accounting because his bookkeeper went part-time, and that when he finally calculated year-end totals, he supplemented the percentage rent with the additional amount due.

Paul Wilgus, the landlord's in-house counsel and executive vice-president, testified that on June 14, 2002, he wrote the tenant a letter, which was admitted into evidence, stating that the landlord would permit a one-time payment accommodation but would not waive its right to exercise its remedies based on the tenant's ongoing default. The letter concludes: "You are hereby notified that henceforth the Landlord intends to rely on the exact terms of the Lease." Landau did not recall receiving the letter. On cross-examination, Wilgus testified that he drafted the lease and that the definition of gross sales did not expressly include the value of items that are given away.

After the hearing, each party submitted proposed findings of fact and conclusions of law. The trial court adopted the tenant's proposed order, holding, in part, that the partial percentage rental payment of $26,000 on February 19 was timely under the terms of the lease. In addition the court found that, "[a]lthough the subsequent payment was not made by the deadline set forth in the Lease it was paid shortly thereafter." The court declined to issue a writ of possession "on a matter which is not determined to be a material breach," citing *Evans Clay Co. v. Sims.*[2]

The landlord assigns error to this ruling. On appeal, we will not disturb a trial court's findings of fact if there is any evidence to support them.[3] However, the trial court's interpretation and application of the law to those findings are subject to de novo review.[4]

The trial court's reliance on *Evans Clay Co. v. Sims*[5] was misplaced because that case did not involve a dispossessory proceeding.

[2] 250 Ga. 173 (296 SE2d 587) (1982).

[3] *Ins. Indus. Consultants v. Essex Investments*, 249 Ga. App. 837, 839 (1) (549 SE2d 788) (2001).

[4] Id. at 839-840 (1).

[5] Supra.

In *Evans Clay Co.*, the Supreme Court held that the lessor was not entitled to cancel a clay-mining lease based on insufficient royalty payments because the lease expressly forbade forfeiture in the event that any "royalty was not paid in exact compliance with the terms of the lease."[6] By contrast, the case at bar is controlled by a lease and a statute, OCGA § 44-7-54, both of which demand strict compliance.

OCGA § 44-7-54 (a) (1) requires the tenant to pay into the registry of the trial court:

> All rent and utility payments which are the responsibility of the tenant payable to the landlord under terms of the lease which become due after the issuance of the dispossessory warra it, said rent and utility payments to be paid as such become due. If the landlord and the tenant disagree as to the amount of rent, either or both of them may submit to the court any written rental contract for the purpose of establishing the amount of rent to be paid into the registry of the court.

Subsection (b) provides that "[i]f the tenant should fail to make *any* payment *as it becomes due* pursuant to . . . this Code section, the court *shall* issue a writ of possession and the landlord *shall* be placed in full possession of the premises. . . ."[7] OCGA § 44-7-54 mandates strict compliance and does not permit exceptions for late payments. Moreover, in a commercial lease, the default provisions control,[8] and the lease at issue does not contain a clause permitting the tenant to avoid termination of the lease upon attempted, good-faith compliance.[9]

As noted above, the lease required the landlord to provide three days notice of default. The tenant concedes that it received notice of default concerning the payment of percentage rent on February 18, 2003. Therefore, to avoid termination of the lease and dispossession, the tenant was obligated, both under the statute and the lease, to pay the entire sum within three days. According to the tenant's calculations as stated in its appellate brief, the sum tendered on February 19 was not the total amount due. Trial testimony indicated that it was merely a "good faith guesstimate." Moreover, the landlord provided a second notice of default and demanded possession of the premises on March 4. The March 12 partial payment was untimely, and the trial court was not authorized to declare it an immaterial breach. Rather, the court was required to issue a writ of possession in accordance with

---

[6] (Punctuation omitted.) Id.

[7] (Emphasis supplied.)

[8] *Eckerd Corp. v. Alterman Properties*, 264 Ga. App. 72, 77 (3) (589 SE2d 660) (2003); *Dublin Pub, Inc. v. Mut. Life Ins. Co. of New York*, 191 Ga. App. 677, 679 (2) (382 SE2d 654) (1989).

[9] Compare *Eckerd Corp.*, supra.

OCGA § 44-7-54 (b).[10]

The tenant contends that both OCGA § 44-7-54 (a) (1) and the lease contemplate disputes over rental amounts, and that one purpose of the hearing was to resolve the dispute over the percentage rent.[11] The difficulty with the tenant's position is its admission at the hearing that the amount it paid on February 19 was simply an estimate rather than a precise calculation of the total sum due to the landlord.[12] The tenant cannot rely on an admitted partial payment to avoid dispossession.

*Judgment reversed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MARCH 3, 2004.

*Schreeder, Wheeler & Flint, Timothy C. Batten*, for appellant.
*Richelo, Morrissey, Storrs & Wright, Brian J. Morrissey*, for appellee.

---

[10] See *Dublin Pub, Inc.*, supra.
[11] The lease states that the landlord may audit the tenant's books upon a disagreement with its gross sales figures, following which audit either the tenant would pay any deficiency or the landlord would refund any overpayment.
[12] In any event, the trial court found that the tenant had not overpaid percentage rent.