## A04A1200. HOOD v. PECK.
### (603 SE2d 756)

MIKELL, Judge.

In this appeal, we affirm the judgment entered in favor of Arlene G. Peck in her suit against her tenant and its guarantor. The relevant facts follow.

On July 30, 1993, Peck entered into a commercial lease with Eurocar, Limited, whereby Eurocar agreed to lease 4,560 square feet of office space at 6518 Roswell Road in Atlanta. The monthly rent was $5,320 as of the date the lease expired, January 31, 1999. The lease also gave Eurocar the option to renew for two additional five-year terms, provided that Eurocar was not in default and that the parties mutually agreed upon the new rental amount. The option provision further stipulated that, if no agreement could be reached, and Eurocar remained in possession of the premises after January 31, 1999, then Eurocar would be a tenant at will and the rent would increase to 150% of the rent in effect at that time, which was $5,320. Upon termination of the lease, Eurocar was required to surrender the premises to Peck "in the same condition as at commencement of term, normal wear and tear only excepted." Finally, Eurocar was obligated to reimburse Peck for any attorney fees incurred in enforcing Eurocar's obligations. The lease was executed by Alfredo R. Hood, Eurocar's president and chief executive officer. Hood also signed a guaranty of Eurocar's obligations under the lease. On December 31, 1996, Hood sold his interest in Eurocar to his partner, Eduardo Caro.

Peck and Caro entered into renewal negotiations as the end of the lease approached but were unable to reach an agreement. Eurocar remained in possession of the premises but failed to pay rent in the amount of 150% of $5,320, or $7,980. Instead, Eurocar tendered $5,320 by check per month for February, March, April, May, June, July, August, and September 1999. Peck cashed these checks after writing "partial payment" on most of them, and she notified Caro that Eurocar owed the $2,660 monthly differential.

Finally Peck retained counsel, who sent a letter to Hood on August 6, 1999, notifying him that Eurocar's tenancy would end 60 days from his receipt of the letter and directing Eurocar to vacate the

premises by that time. Eurocar did not respond, and on October 11, 1999, counsel delivered a letter to Hood and to Eurocar stating that the tenancy had expired and demanding immediate possession of the premises. Eurocar did not vacate, and Peck filed a proceeding against tenant holding over on October 13. Eurocar filed an answer and counterclaim. On October 21, Peck's counsel returned Caro's October rent check, stating that the tenancy had expired, that Peck would not create a tenancy at will, and that Eurocar was required to vacate the premises.

On November 10, Eurocar filed a notice of removal in federal district court. Peck moved to remand the case to state court, and the district court granted the motion on March 21, 2000. On March 28, Peck filed a motion to compel payment of rent into court. Finally, on or about April 7, 2000, Eurocar vacated the premises.

Shortly thereafter, Peck amended her complaint, alleging that Eurocar had failed to pay rent for seven months, from October 1999 through April 2000; that as a result, Eurocar was indebted to Peck in the amount of $49,742 rent, $1,040.66 interest, $3,979.36 late fees, and $5,501.20 attorney fees. Peck also sought to recover sums due for the months of February 1999 through September 1999, including $21,280 past due rent, $678.90 interest, and $2,220.89 attorney fees. Finally, Peck added a count alleging that Eurocar had damaged the premises. Peck then added Hood as a defendant, seeking recovery on the guaranty of all sums owed by Eurocar. Hood answered and filed a third party complaint against Caro. Hood also moved for judgment on the pleadings, asserting that he could not be held liable for rent accruing after expiration of the lease and that Peck's act of allowing Eurocar to remain as a tenant holding over constituted a novation. The motion was denied, and the case proceeded to a bench trial on April 23, 2003. Eurocar failed to appear, and default judgment was issued against it. After hearing all of the evidence, the trial court issued judgment in favor of Peck against Hood and Eurocar, jointly and severally, in the amount of $149,433.68, including:

> (1) Unpaid rent in the amount of $71,002; (2) Late fees in the amount of $3,979.36; (3) Interest in the amount of $21,287.97; (4) Property damage of $1,753; (5) Loss of use/loss of rental value during repair period in the amount of [$]31,920; and (6) Attorney's fees and legal expenses in the amount of $19,491.35.[1]

Hood appeals from this judgment, contending that the trial court erred by (1) holding him liable for "holdover" rent; (2) awarding late

---

[1] Hood was awarded $149,433.68 on his third-party complaint against Caro.

fees for rent which accrued during the holdover period; and (3) awarding loss of rental value damages. We affirm.

"On appeal, we will not disturb a trial court's findings of fact if there is any evidence to support them. However, the trial court's interpretation and application of the law to those findings are subject to de novo review."[2] Bearing these principles in mind, we address the enumerated errors.

1. Hood contends that, under the guaranty, he cannot be held liable for rent accruing after the lease term ended on January 31, 1999. He cites OCGA § 10-7-3 for the proposition that a contract of suretyship is one of strict law, and the surety's liability cannot be extended by implication or interpretation. Hood's reliance is misplaced, however, because his liability is established by the terms of the guaranty.[3] The guaranty states that Hood "unconditionally guarantee[s] and promise[s] . . . (a) to pay Lessor . . . all rents and other sums reserved in [the Eurocar] lease . . . and (b) to perform . . . all of the covenants, terms and conditions therein required to be kept . . . by the Lessee." The lease stipulated that if Eurocar remained in possession of the premises after January 31, 1999, without the parties having reached a renewal agreement, then the rent would increase to 150% of $5,320, or $7,980. Therefore, the "holdover" rent awarded by the trial court was specifically reserved in the lease, and Hood was obligated to pay it.[4]

No case cited by Hood mandates a contrary result. In *Roswell Festival v. Athens Intl.*,[5] for example, the guaranty expressly stated that the guarantor's obligations thereunder would terminate on the forty-second month of the lease in the event that no default existed.[6] Since the lessee was not in default as of the forty-second month, the guaranty had expired according to its own terms.[7] By contrast, the guaranty in the instant case states that it "is a continuing one and shall terminate only upon full payment of all rents and all other sums reserved in the lease." Therefore, *Roswell Festival* is inapposite. The other cases cited by Hood, *LeCraw v. Atlanta Arts Alliance*[8] and

---

[2] (Footnotes omitted.) *Vinings Jubilee Partners v. Vinings Dining*, 266 Ga. App. 34, 36 (596 SE2d 209) (2004).

[3] See *John Deere Co. v. Haralson*, 278 Ga. 192, 195, n. 3 (599 SE2d 164) (2004).

[4] Id.; see also *Tauber v. Community Centers Two*, 235 Ga. App. 705, 706-707 (3) (509 SE2d 662) (1998) (unconditional guarantee rendered guarantor liable for rent of tenant holding over).

[5] 259 Ga. App. 445 (576 SE2d 908) (2003).

[6] Id. at 446.

[7] Id. at 448 (1).

[8] 126 Ga. App. 656 (191 SE2d 572) (1972).

*Southeastern Hose v. Prudential Ins. Co. &c.*,[9] concerned whether the guarantor was liable for rent accruing during renewals of a lease, which was not the issue here.

Hood additionally argues that Peck increased the risk to him by failing to seek Eurocar's eviction during the eight-month period beginning in February 1999 and by returning Eurocar's rent checks beginning in October 1999. Hood is correct that under OCGA § 10-7-22, "[a]ny act of the creditor . . . which injures the surety or increases his risk or exposes him to greater liability shall discharge him." However, he omits the remainder of that Code section, which pertinently provides that "a mere failure by the creditor to sue as soon as the law allows or neglect to prosecute with vigor his legal remedies, unless for a consideration, shall not release the surety." Accordingly, Peck's failure to pursue her legal remedies as soon as the law allowed does not affect Hood's liability on the guaranty.[10] Nor was she obligated to accept Eurocar's insufficient rental payments after instituting dispossessory proceedings.

Finally, Hood argues that Peck's act of allowing Eurocar to remain as a tenant holding over constituted a novation. Under OCGA § 10-7-21, "[a]ny change in the nature or terms of a contract is called a 'novation'; such novation, without the consent of the surety, discharges him." This argument fails, however, because there was no change in the terms of the lease. Rather, the lease expressly permitted Eurocar to hold over upon payment of 150% of the rental amount. In any event, "a surety or guarantor may consent in advance to a course of conduct which would otherwise result in his discharge."[11] In the case at bar, the guaranty gave Peck the authority "without limitation, . . . to: (a) change the amount, time or manner of payment of rent or other sums reserved in the Lease; [and] (b) to amend, modify, change or supplement the Lease." Accordingly, even if Hood were correct that the terms of the lease had been modified, he consented in advance to such change.[12] It follows that Hood is not discharged from liability on the guaranty by reason of any novation or increase in the risk.

2. Hood next asserts that the trial court erred in awarding late fees that accrued during the holdover period. However, he admits that Peck's complaint included a prayer for late fees and that the

---

[9] 167 Ga. App. 356 (306 SE2d 308) (1983).

[10] See *Barnett v. Leasing Intl.*, 151 Ga. App. 715, 718 (2) (261 SE2d 452) (1979).

[11] (Citations and punctuation omitted.) *Steiner v. Handler*, 229 Ga. App. 833, 836 (3) (495 SE2d 132) (1997).

[12] See *Underwood v. NationsBanc Real Estate Svc.*, 221 Ga. App. 351, 353 (471 SE2d 291) (1996). Compare *Cantrell v. First Tenn. Nat. Bank Assn.*, 207 Ga. App. 458, 460 (2) (428 SE2d 368) (1993) (unconsented increase in risk discharges surety).

lease required Eurocar to pay late fees in the amount of eight percent of the rent in the event that the rent was not paid by the fifteenth day of the month. Hood argues, however, that even if the "holdover" provision of the lease is valid, that provision did not incorporate the payment of late fees. This argument fails because the lease plainly authorizes the collection of late fees "[i]n the event [Eurocar] fails to pay *any* installment of Rental hereunder."[13] "Holdover" rent was due under the lease beginning in February 1999, and Eurocar failed to pay it. Therefore, late fees were due on each installment of holdover rent.

3. Finally, Hood challenges the award of $31,920 in damages for "loss of use/loss of rental value during repair period." In a bench trial, the judge sits as the trier of fact; the court's findings are analogous to a jury verdict and will not be disturbed on appeal if there is any evidence to support them.[14] Contrary to Hood's argument, there is evidence in the record to support the trial court's finding that Peck lost six months rent as a result of Eurocar's damage to the premises. Peck's listing agent, David M. Andes, testified that upon inspecting the premises after Eurocar vacated them, he discovered that the retail store had been turned into a garage warehouse. The carpet was destroyed; the walls appeared as though they had been hit by cars; the floors were covered in grease; the store front had been replaced by drive-in doors; and the ceiling had been removed. Andes determined that the space was unrentable and returned the listing to Peck. He estimated that the cost of repair would exceed $30,000. Peck testified that she lacked the funds to make the repairs. She was finally able to relet the premises at a reduced rate to a landscaping company, and a copy of the lease with that tenant was introduced into evidence. The lease term began on October 7, 2000, six months after Eurocar vacated the premises. Accordingly, the evidence supports the trial court's finding that as a result of Eurocar's failure to restore the premises to its original condition, Peck lost six months rent at the rate of $5,320 per month, for a total of $31,920.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 25, 2004.

---

[13] (Emphasis supplied.)

[14] *Housing Auth. of Decatur v. Bigsby*, 200 Ga. App. 878, 879 (2) (410 SE2d 44) (1991); see also *Vinings Jubilee Partners*, supra.

*Deming, Parker, Hoffman, Green & Campbell, Paul M. Hoffman,* for appellant.
*Bondurant, Mixson & Elmore, Neeli Ben-David,* for appellee.