A97A2335. BRESNAHAN v. LIGHTHOUSE MISSION, INC.
(496 SE2d 351)

JOHNSON, Judge.

On February 22, 1996, Shawn Bresnahan purportedly entered into a real estate purchase agreement with Lighthouse Mission, Inc. ("Lighthouse"). Under the terms of the agreement, Lighthouse was to sell certain real estate to Bresnahan for the lesser of $66,000 or a price to be determined based on an appraisal of the property. The agreement was signed by Bresnahan and Dorothy Pinkerton, who was then president of Lighthouse. No other officer or director signed on behalf of Lighthouse, and Pinkerton's signature did not specify whether she signed as president on behalf of Lighthouse or individually. Subsequently, Lighthouse refused to sell the property.

Bresnahan filed an action against Lighthouse, seeking specific performance of the agreement. Specifically, Bresnahan asked the court to require Lighthouse to tender the property subject to the purchase agreement for the agreed upon amount. Lighthouse filed a motion for summary judgment, claiming that the agreement was unenforceable because Article III of Lighthouse's by-laws provided that, "[a]ny sale or transfer of any stock, bond, security, or other property standing in the name of the Corporation, shall be valid only if signed by the Corporation acting through any two (2) officers." The trial court granted Lighthouse's motion for summary judgment, and Bresnahan appeals, alleging that Pinkerton had apparent authority to enter into the agreement and that Lighthouse ratified the agreement. We affirm.

Summary judgment is appropriate when the court, viewing all the evidence and drawing reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. [Cit.]" Id.

1. OCGA § 10-6-21 provides that "[t]he agent shall act within the authority granted to him, reasonably interpreted; if he shall exceed or violate his instructions, he does it at his own risk, the principal having the privilege of affirming or dissenting, as his interest may dictate." In this case, Lighthouse showed that Pinkerton acted outside the scope of authority that had been granted to her by Lighthouse. Lighthouse had an express provision in its by-laws requiring any sale of property to be signed by two officers acting on behalf of Lighthouse. According to the record, every document authorizing the sale or transfer of property standing in the name of Lighthouse has always included the signature of two officers of Lighthouse acting in their official capacity. Clearly, the agreement at issue was signed only by Pinkerton and did not even show that she was signing in a representative capacity. "[O]fficers appointed by the directors are clothed with only such powers and authority as are expressly conferred upon them by the charter or the by-laws, or as may be implied by usage and acquiescence. [Cit.]" *Henderson Lumber Co. v. Chatham Bank &c. Co.*, 33 Ga. App. 196, 197 (1) (125 SE 867) (1924). Pinkerton lacked the actual authority to bind Lighthouse.

Even if Pinkerton lacked actual authority, Bresnahan contends that Pinkerton, as president of Lighthouse, had apparent authority sufficient to bind Lighthouse. "Apparent authority is that which the principal's conduct leads a third party reasonably to believe the agent has; it creates an estoppel allowing third parties to bind a principal to the agent's acts on account of the principal's conduct, reasonably construed by third parties acting in innocent reliance thereon. [Cit.] Where there were no manifestations of authority by the principal to a third party, apparent authority is not in issue. [Cit.]" *Morris v. Williams*, 214 Ga. App. 526, 527 (2) (448 SE2d 267) (1994).

While Bresnahan offered evidence that Pinkerton informed the real estate broker at the time the purchase agreement was presented that Pinkerton had the authorization and approval of the Lighthouse Board of Directors to sign the agreement on behalf of Lighthouse and that this information was conveyed by the broker to him, Bresnahan failed to offer evidence of any conduct by Lighthouse that clothed Pinkerton with apparent authority. The evidence is undisputed that Lighthouse has never held Pinkerton out as anyone who, on her sole signature, could bind the corporation on the sale or transfer of any property. Pinkerton did not have apparent authority to bind Lighthouse in this transaction.

While Bresnahan argues that Pinkerton, as president of Lighthouse, necessarily had apparent authority to enter into the agreement, this argument lacks merit. "A president of a corporation does not, by virtue of his office alone, have authority to contract in its behalf, although being the alter ego of the corporation he may be presumed to have power to act for it in matters within the scope of its ordinary business." (Citations and punctuation omitted.) *Computer Maintenance Corp. v. Tilley*, 172 Ga. App. 220, 221 (1) (322 SE2d 533) (1984) (physical precedent only). In the present case, the agreement was not executed in Lighthouse's name, was not executed by Pinkerton "as president of" or "on behalf of" Lighthouse, and did not involve matters within the scope of Lighthouse's ordinary business. Lighthouse has successfully rebutted the presumption of Pinkerton's apparent authority as president of Lighthouse. The cases cited by Bresnahan are inapposite. As stated in *Farmers & Merchants Bank v. Stovall Investment Co.*, 50 Ga. App. 277, 282-284 (177 SE 882) (1934), in cases holding that the president of a corporation possesses apparent authority to bind the corporation, the corporation received a benefit from the unauthorized act or ratified the unauthorized act. As stated below in Division 2, Lighthouse did not receive any benefit from Pinkerton's act and did not ratify Pinkerton's act.

2. Bresnahan next contends that Lighthouse ratified the agreement signed by Pinkerton. Once again, however, Bresnahan has failed to point to any evidence that Lighthouse ratified the agree-

ment in any way. For ratification to be effective, the principal must know of the agent's unauthorized act and, with full knowledge of all the material facts, accept and retain the benefits of the unauthorized act. *Southtrust Bank &c. v. Parker*, 226 Ga. App. 292, 295 (1) (486 SE2d 402) (1997). Contrary to Bresnahan's assertion, the realtor, not Lighthouse, retained the earnest money deposit, and there was no evidence that Lighthouse authorized the realtor to keep the deposit. Therefore, the retention of the earnest money by the realtor was not ratification by Lighthouse. Furthermore, we do not find that the opportunity to wait and see if the appraisal brought back a better sale figure was a benefit to Lighthouse.

While we do not know exactly when Lighthouse learned of the agreement signed by Pinkerton, Lighthouse repudiated the agreement approximately one month after its execution and approximately one month prior to the scheduled closing. It was not "unjust, unfair, or inequitable" to allow Lighthouse to repudiate the contract under the circumstances. *Stovall Investment*, supra at 283.

Based on the foregoing, the trial court did not err in granting Lighthouse's motion for summary judgment.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 29, 1998.

*Lovett, Cowart & Ayerbe, James D. Cowart*, for appellant.
*Sell & Melton, Edward S. Sell III*, for appellee.