A02A2032. ROSWELL FESTIVAL, LLLP v. ATHENS INTERNATIONAL, INC. et al.
(576 SE2d 908)

ANDREWS, Presiding Judge.

Roswell Festival, LLLP (Roswell) sued APG Restaurants, Inc. d/b/a Athens Pizza (APG) for breach of a commercial lease and sued Athens International, Inc. and Steve C. Alexander, the guarantors of that lease. The trial court awarded summary judgment to both guarantors, and Roswell appeals that decision. We find no error and affirm.

On January 31, 1995, Roswell and APG entered a five-year lease for certain retail space in the Roswell Festival Shopping Center.

---

Shortly before the lease was finalized, on December 22, 1994, Athens International, in its corporate capacity, and Alexander, in his individual capacity, executed separate guaranties of APG's obligations under the lease. The two guaranties were identical in form and each unconditionally guaranteed the rent due under the lease. Each guaranty expressly stated: "*The obligations under this guarantee shall terminate on the 42nd month of said Lease in the event that no default exist[s]."

It is undisputed that during the first 42 months of the 60-month lease, APG was occasionally late with its monthly payments. L. Gregg Ivey, Roswell's general managing partner, testified that "[p]rior to the execution of the Lease Extension, APG was in default under the Lease in excess of twenty (20) times, including the default on the forty-second month." Roswell claims that APG paid the rent late more than 20 times between October 1996 and May 2000. Despite APG's spotty payment history, Roswell agreed to extend APG's lease for five additional years. On May 1, 2000, Roswell and APG entered the "FIRST AMENDMENT TO THE ROSWELL FESTIVAL, LLLP LEASE AGREEMENT." Ivey, acting on behalf of Roswell, and Alexander, as president of APG, executed a single-page document which extended the term of the lease to August 31, 2005. The amendment, however, made no reference to either guaranty.

APG defaulted on the lease in July 2001. Roswell proceeded with a dispossessory action and obtained a writ of possession. Thereafter, Roswell sued not only APG but also Athens International and Alexander, claiming that the guarantors were liable because their obligations did not cease on the forty-second month of the original lease since APG was in "default" in February 1999.[1] Roswell sought $250,817.80 plus interest from the guarantors.

Without question, the record shows that APG was late with its rent payment in February 1999, incurred late fees, and cured its default during that month. Alexander testified, however, that Roswell had issued a statement to him "showing that on February 19, 1999, the February rent in the amount of $4,946.99 was paid, which included common area maintenance, the water/sewer fee, a courier fee and a late charge for the February rent." A copy of the statement issued by Roswell and dated March 1, 1999, shows a 0.00 balance remaining as of February 19, 1999. After February 1999, Roswell took no collection action, allowed APG to remain in the premises for the duration of the lease, and agreed to the first amendment to

---

[1] The parties and the trial court considered February 1999 as the forty-second month of the lease. Obviously, February 1999 is not the forty-second month from January 31, 1995. Apparently, due to a delay in construction as contemplated by the parties, February 1999 was the forty-second month after APG first commenced paying rent.

extend the term five years. Yet, according to Special Stipulation No. 7 of the original lease, APG had the right to renew the lease only if APG was not in default under the lease.

In opposing summary judgment, Roswell argued that the fact that APG subsequently cured its default by paying the rent and late fees and thereby prevented the "default" from becoming an "Event of Default" did not alter the fact of APG's "default." The trial court rejected this interpretation. Determining that each guaranty had expired under its own terms, the court awarded summary judgment to the guarantors.

1. Roswell contends that the trial court erred in engaging in contract construction because the language in the guaranties is plain and unambiguous.

On appeal, this Court considers questions of law de novo. *Tachdjian v. Phillips*, 256 Ga. App. 166, 168 (568 SE2d 64) (2002). The construction of the provisions of a lease, as with other written contracts, is generally a matter of law for the trial court to determine. *Peachtree &c. Investors v. Reed Drug Co.*, 251 Ga. 692, 694 (1) (308 SE2d 825) (1983); see OCGA § 13-2-1. Absent ambiguity that the trial court cannot resolve using the statutory rules for contract construction, "it remains the duty of the trial court to look to the language of the contract with a view to effectuating the intent of the parties." (Citations and punctuation omitted.) *Winburn v. McGuire Investment Group*, 220 Ga. App. 384, 385 (1) (469 SE2d 477) (1996).

Here, at issue, is the meaning of the term "default" as it appeared in the guaranty. Roswell argues that APG's failure to pay the rent when due in February 1999, the forty-second month of the lease, left APG in "default" during that month. Roswell asserts that since the condition that APG not be in "default" on the forty-second month went unfulfilled, the guarantors' obligations continued beyond the forty-second month. Roswell claims that the termination of the guaranties was expressly conditioned upon the nonoccurrence of a "default" rather than the nonoccurrence of an "Event of Default." Roswell argues that by curing its default under the lease, APG did not eradicate the existence of a default within the meaning of the guaranties. Ivey testified that Roswell would not have agreed to extend the term of the lease unless the guaranties "were in full force."

Neither the lease nor the guaranties specifically defined "default." The lease did, however, define an "Event of Default." According to paragraph 15 (a),

It shall constitute an "Event of Default" hereunder if Tenant fails to pay any Rental [sic] when due, or if Tenant defaults in, breaches or in any way fails to perform any of the cove-

nants, terms, conditions, provisions or agreements of this Lease on the part of the Tenant to be kept, observed or performed and such default is not remedied within ten (10) days after notice from Landlord.

Upon reviewing the documents, the trial court construed the term "Event of Default" in the lease to be synonymous with the term "default" as used and intended in the guaranties. Noting that the lease allowed a ten-day period to cure a default after notice was provided and further noting that Roswell could not exercise any of the remedies authorized by the lease until after that notice and grace period, the trial court found that the guarantors had no liability under their guaranties until and unless APG failed to cure a default. The trial court decided that a failure to cure a default in the forty-second month and not simply a failure to pay the rent on time was a prerequisite to extending the guaranties beyond the forty-second month. This interpretation comports with the rules of contract construction and the law applicable to guaranties. See OCGA § 10-7-3 (contract for suretyship or guaranty is one of strict law); *Johns v. Leaseway of Ga.*, 166 Ga. App. 472, 473 (304 SE2d 555) (1983). As noted above, the dispositive language stated: "*The obligations under this guarantee shall terminate on the 42nd month of said Lease in the event that no default exist [sic]." A literal reading of the terms, "on the 42nd month of said Lease" and "in the event that no default exist," results in the same outcome. No evidence of record shows that *on February 1, 1999*, APG was in default as of that day. And, after Roswell's acceptance of APG's late payment, as of February 19, 1999, APG was no longer in default for the remainder of February. The March 1, 1999 statement issued by Roswell to APG indisputably establishes that as of February 19, 1999, APG's account had a zero balance with no amount outstanding. So, "on the 42nd month of said Lease," specifically *on February 19, 1999*, no default existed.

2. Roswell asserts that even assuming solely for the sake of argument that contract construction was necessary, the trial court misapplied the basic rules of contract construction. We disagree.

"A contract of guaranty or suretyship is primarily one to pay the debt of another which may be due and payable by the principal debtor to the creditor upon default." (Citation omitted.) *Indus. Mechanical v. Siemens Energy &c.*, 230 Ga. App. 1, 2 (495 SE2d 103) (1997). "The contract of suretyship is one of strict law; and the surety's liability will not be extended by implication or interpretation." OCGA § 10-7-3. "The undertaking of a surety being stricti-juris, he cannot, in law or equity, be bound further than the very terms of his contract." (Citation and punctuation omitted.) *Avec Corp. v. Schmidt*, 207 Ga. App. 374, 375 (427 SE2d 850) (1993).

Under the explicit terms in each guaranty, the guarantors' obligations were to end "on the 42nd month of said Lease in the event that no default exist[s]." But, by Roswell's interpretation, if APG paid the rent late in the forty-second month, the guaranties would continue indefinitely. Yet, such a result would have extended Alexander's and Athens International's liability by implication and interpretation and would have engrafted additional liability upon the guarantors, binding them further than the terms of their contracts. This the law forbids. See *Avec Corp.*, supra. As the trial court aptly observed,

> If the personal guaranty of Defendant Alexander and the corporate guaranty of Defendant Athens International, Inc. were so vital and germane to the lease extension, it is unlikely that the extension document would omit such an important issue especially in light of the tenuous language and status of the guaranty limitation clauses as they existed.

The trial court did not err in finding that the guaranties had expired. See *Stone v. Palm Pool Products*, 198 Ga. App. 751, 753 (403 SE2d 69) (1991). No error has been shown.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED FEBRUARY 5, 2003.

*Michael D. Flint, Shira Adler*, for appellant.

*Gibson, Deal & Fletcher, John W. Gibson, Mitch J. Skandalakis*, for appellees.