## A06A1456. GOOBICH v. WATERS et al.
(640 SE2d 606)

BARNES, Judge.

After the collapse of an apparent agreement between Joel Goobich and Gary and Teresa Waters concerning the purchase of Outdoor Environments, Inc. (OEI), a nursery business, Goobich sued the Waterses for breach of contract and specific performance. The trial

court granted the Waterses' summary judgment motion, and Goobich now appeals. Because we find that the parties had reached an enforceable agreement on all material terms, we reverse.

Viewed in the light most favorable to Goobich, the record shows that the Waterses decided to sell OEI in 2004. After negotiations, the parties finalized a letter of intent on November 29.

The letter specified that Goobich would purchase and the Waterses would sell the OEI properties and business for terms including $1,950,000 in cash at closing, a five-year contract for consulting by the Waterses in exchange for $225,000, a six-year earn-out of $600,000 to the Waterses, and an incentive bonus of $150,000. The letter also provided, however, that it

> shall not create any legally binding rights or obligations . . . except as provided in Paragraphs 6, 7, 8, [and] 10 below. Instead, Buyer and Seller . . . have merely expressed their intention of negotiating one or more agreements . . . containing principal terms, as may be mutually agreed therein. Upon your execution of this letter, each of the undersigned will use their mutual reasonable efforts to negotiate a binding Purchase Agreement with a view to consummating any agreed transaction on or before January 14, 2005.

Paragraph 6 of the letter reads in relevant part as follows:

> Contingencies. The closing of this transaction shall be subject to the satisfaction of customary conditions to closing including, but not limited to, the following:
>
> . . .
>
> D. The negotiation and execution of a definitive Agreement of Sale mutually acceptable to the parties and their shareholders hereto, as further stated herein, and containing representations, warranties, covenants, conditions and indemnities usual and customary in transactions of this type. The parties agree to share the cost of a transactional (escrow) attorney to draft the Agreement of Sale. . . .

Paragraph 11 of the letter reiterated that it "[did] not constitute an agreement to consummate the transactions described herein," and that "any legal obligations between the parties hereto shall be only as set forth in a duly negotiated and executed formal written definitive Agreements of Sale if the parties are successful in negotiating same."

On December 30, 2004, the Waterses executed an addendum identified as "an integral part" of the letter of intent. In addition to removing various contingencies not at issue here, the addendum specified:

3. The Non Binding LOI . . . is binding on both parties subject to:

A. Clauses 6D, 6G, [and] 6H of the LOI.

4. The Parties hereby agree to have a "definitive" agreement drawn up by [the] closing attorney . . . , and as evidence thereof, each will deposit a check . . . in the amount of $1000, with Broker, as a deposit payment for the drawing up of such agreement. . . .

The addendum also provided that "[i]n case any one or more of the provisions contained in this contract shall for any reason be held to be invalid, . . . such invalidity . . . shall not [a]ffect any other provision hereof." Goobich signed the addendum on January 5, 2005. That same day, Mrs. Waters signed an OEI check payable to the closing attorney in the amount of $1,000.

In the course of obtaining financing, Goobich obtained an appraisal of the properties, which Mr. Waters asked to see. When Goobich expressed concern that the high values stated there might lead the Waterses to break the deal, the Waterses assured Goobich on January 25 that they would "not be using the appraisals . . . to break our agreement with you for the purchase of the two nurseries." The next day, however, the Waterses requested that Goobich personally guarantee the earnout and bonus amounts specified in the letter of intent. Such guarantees had not been mentioned in the letter of intent or addendum. The deal soon failed, and Goobich brought suit. After discovery, the Waterses moved for summary judgment, which the trial court granted.

In a single enumeration of error, Goobich argues that the trial court erred when it granted summary judgment to the Waterses. We agree.

1. On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

"The construction of the provisions of a written contract is generally a matter for the trial court to decide as a matter of law. On appeal of such contract construction by the trial court, we conduct a

de novo review of the legal issues." (Citations and footnotes omitted.) *Neely Dev. Corp. v. Svc. First Investments*, 261 Ga. App. 253, 255 (1) (582 SE2d 200) (2003).

> [N]o contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means that there is no agreement to be enforced. If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable "agreement to agree."

(Punctuation and footnotes omitted.) *Kreimer v. Kreimer*, 274 Ga. 359, 363 (2) (552 SE2d 826) (2001). However, a deferral of agreement on a nonessential term does not invalidate an otherwise valid contract. Id. Specifically, the fact that an agreement to purchase and sell real estate contains contingencies, such as the securing of financing, does not allow a seller to escape that agreement when a better deal materializes or second thoughts arise. As the Supreme Court of Georgia has noted concerning a purchase-and-sale agreement for real estate:

> If a vendor could successfully utilize [a] contract term [creating the condition that the purchasers must obtain financing] to rescind the contract at any time prior to the occurrence of the condition (presumably whenever the vendor received a better offer), a purchaser would never be able to rely on the contract while he sought financing. Any vendor could rescind such a contract with impunity. This result would be intolerable and would destroy the good faith reliance among individuals which permits them to act in accordance with their agreements.

*Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980); see also *Kreimer*, supra, 274 Ga. at 363 (2) (the deferral of the division of stock "by mutual agreement" at a future date did not render a settlement memorandum unenforceable).

The addendum here can be read in only one reasonable way: that the parties intended to bind themselves to the terms laid out in the letter of intent, subject to the contingency that the parties prepare and execute closing documents. Shortly after the signing of the addendum, the Waterses paid for their portion of the closing attorney fees and assured Goobich that his providing them with the appraisals would not scuttle the deal. The existence of this future obligation to execute closing documents, identified by the letter of intent as one of

"the customary conditions to closing," does not mean that the parties did not intend to be bound by the essential terms already agreed to. The execution of the closing documents was, in short, "a condition precedent to the duty of both parties to render their promised performances[,] and not a condition precedent to the existence of a valid contract." (Citation and punctuation omitted.) *Brack*, supra, 246 Ga. at 822.

Because the plain language of the addendum shows that the parties had reached a binding agreement on all material terms concerning the purchase and sale of the nurseries, we conclude that the trial court erred when it granted summary judgment to the Waterses. See *Neely*, supra, 261 Ga. App. at 255-257 (1) (finding that addendum to agreement to purchase and sell land was unambiguous, and affirming grant of specific performance to buyer).

2. The Waterses also contend that, even if the agreement was enforceable legally, they were still entitled to summary judgment because Goobich repudiated the agreement when he and his wife refused to sign documents personally guaranteeing their obligations under the agreement. Although Goobich asserts that questions of fact exist on which party repudiated the contract, we must note that nothing in the agreement required such a guaranty, and Mrs. Goobich had no obligation to do so because she was not a party to the agreements and nothing in the agreements obligated her to do so.

The Waterses' reliance on *Gifford v. Jackson*, 115 Ga. App. 773, 774-775 (156 SE2d 105) (1967), is misplaced because the case does not hold that a personal guaranty was necessary under these facts. Instead, the case holds that

> [t]he pre-incorporation contract approach considers the one making a contract, on behalf of a corporation to be formed, as bound personally on the contract, in the absence of an agreement to the contrary. No corporation has any existence until formed; therefore, to make a contract for a corporation to be formed would be of no legal effect if the persons making it were not bound, and the law will not presume a legal absurdity. Under the pre-incorporation contract theory of this case then, the person making a contract for a corporation to be formed is personally liable on that contract.

(Citations and punctuation omitted.) Id. Consequently, as Goobich concedes in his brief, he would be personally liable under this agreement in which he was designated as the "buyer" and he signed the agreement personally with no designation showing that he signed in a representative capacity. Thus, as both parties agree that Goobich

was personally liable under the agreement, a personal guaranty is unnecessary and Goobich did not repudiate the contract by refusing to provide one.

Moreover, under our law a personal guaranty is a means "whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal, the principal in either instance remaining bound therefor." OCGA § 10-7-1. Here, the Waterses apparently want Goobich to guarantee that he will be obligated to pay his own debt, an act that would not improve their legal position and was not required by the agreement. Thus, Goobich's refusal to provide a personal guaranty for the performance of the agreements standing alone did not authorize the grant of summary judgment to the Waterses, although questions of fact may remain on whether Goobich otherwise repudiated the agreements.

3. Finally, even though their motion for summary judgment asserted that the Waterses were entitled to summary judgment on Goobich's specific performance claims, they have not argued this issue in their appellate brief. Nevertheless, we must address the issue because they relied upon this argument below and we must determine whether the grant of summary judgment was right for any reason. See *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (431 SE2d 746) (1993). The Waterses contend they were entitled to summary judgment on this basis because they could not be compelled to convey the property to Goobich as they did not own the property. See *Jolles v. Holiday Builders*, 222 Ga. 358, 360 (149 SE2d 814) (1966). Goobich's response to the motion for summary judgment, however, asserted that the Waterses were the de facto owners of the property even if the properties were owned by the corporation.

As the party opposing the motion for summary judgment, Goobich was entitled to the benefit of all reasonable doubt and to have the evidence and all inferences and conclusions therefrom construed most favorably toward him. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). Review of the record shows that the Waterses have represented that they were the owners of the real property in that Mr. Waters testified that they intended to sell the property with the store, that they owned the store. Additionally, Mrs. Waters testified that they owned the property, and that they were the sole owners of the holding company that the Waterses contend owned the property. This testimony is sufficient to create an issue of fact on the extent of the Waterses' ownership of the property.

In *Chastain v. Schomburg*, 258 Ga. 218 (367 SE2d 230) (1988), our Supreme Court also held that "specific performance is available to the extent of the purported vendor's own interest in the property

where he has contracted in his own name." Consequently, as questions of fact remain on the Waterses' interest in the property in question, a grant of summary judgment on the claims for specific performance was not authorized. Further, we note that even if specific performance was not authorized for any reason, the Waterses would not be entitled to summary judgment on Goobich's claims for breach of contract.

Accordingly, the grant of summary judgment must be reversed.

*Judgment reversed. Andrews, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 1, 2006 —
RECONSIDERATION DENIED DECEMBER 15, 2006 — 

*Mozley, Finlayson & Loggins, Lawrence B. Domenico, Sirce Elliott*, for appellant.

*Anderson, Tate & Carr, Thomas T. Tate, Donald L. Swift III*, for appellees.

