A07A1875. CAPITAL COLOR PRINTING, INC. v. AHERN et al.
(661 SE2d 578)

MILLER, Judge.

Capital Color Printing, Inc. ("CCP") brought this action against Quality Printing 4 Less, LLP and its successor in interest, Martin

Michaels Printing, LLP (collectively "Quality Printing"), and its owners, Jason M. Ahern and Todd M. Heflin. The complaint sought payment due for printing services CCP performed for Quality Printing, and alleged that Ahern and Heflin were personally liable for this debt based upon a written guaranty. CCP now appeals the trial court's grant of summary judgment to Ahern and Heflin individually and its denial of CCP's motion for summary judgment as to Heflin. We reverse, finding that the guaranty at issue renders Heflin personally liable for the debts incurred by Quality Printing, and that a material question of fact exists as to whether Ahern clothed Heflin with apparent authority to sign his name on that guaranty.

> On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law. [Cit.]

*Wachovia Bank v. Moody Bible Institute of Chicago*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

So viewed, the evidence shows that Quality Printing is a printing broker, meaning that it sells printing services to customers but subcontracts with third parties, such as CCP, to actually perform those services. In February 2004, Ahern, acting on behalf of Quality Printing, contacted CCP about performing printing work. Elaine Tennant, CCP's credit manager, explained to Ahern that he and Heflin would have to execute personal guaranties before CCP could perform work for Quality Printing.

On March 17, 2004, Quality Printing forwarded to CCP a one-page credit application, which contained the guaranty at issue (the "Guaranty"). On the front side of that application, a box captioned "CUSTOMER" appears at the top, and contains blanks labeled "Your Name" and "Company Name." The names "Todd M. Heflin and Jason Ahern" are written on the line next to "Your Name," and "Quality Printing 4 Less" is written on the line provided for "Company Name." Quality Printing's corporate address, telephone and fax numbers, and Federal Employer Identification Number are also listed in the "customer" box. Immediately below this box are several other questions relating to the "customer," and the responses indicate that Quality Printing is a partnership, owned by Ahern and Heflin. Toward the bottom of the front side of the application is the sentence, "The undersigned has read the terms and conditions of sale on the reverse side of this

agreement and agrees to be bound thereby." Although immediately below that sentence is a blank line for the customer's signature, no signature appears thereon.

Just below the customer signature line is the statement:

> The undersigned guarantees payment of any and all invoices for services rendered to customer including the payment of all interest and attorney's fees. Guarantor(s) has read the terms and conditions of sale on the reverse side of this agreement and agrees to be bound thereby.

Immediately below that statement is a blank line for the insertion of the guarantor's name and signature. On that line appear the printed names of Ahern and Heflin, as well as what appear to be the signatures of each.

The reverse side of the application lists the "Terms and Conditions" of the agreement, and contains 28 separate, numbered paragraphs. Paragraph 27 provides, in relevant part:

> GUARANTOR(S): In consideration of and to induce [CCP] to extend credit to the Purchaser as indicated on the front of this credit application, the Guarantor(s) agrees to be . . . jointly, severally, and directly liable to the Printer for the due performance of all such Obligations. The Guarantor(s) jointly and severally also agree to pay in addition thereto, all costs, expenses and reasonable attorney's fees at any time paid or incurred in endeavoring to collect said indebtedness, liabilities and obligations, or any part thereof, and in and about enforcing this instrument.

That page defines the term "Printer" as meaning CCP, but does not define the term "Purchaser."

Heflin moved for summary judgment as to CCP's claims against him individually, claiming that the Guaranty failed to specifically identify the principal debtor and was therefore unenforceable as a matter of law. Ahern filed a similar motion for summary judgment as to CCP's claims against him individually, and further asserted that the Guaranty was unenforceable against him because his purported signature thereon was a forgery. CCP filed cross-motions for summary judgment on its claims against Ahern and Heflin, arguing that the Guaranty satisfied the Statute of Frauds and was therefore enforceable. It also claimed that there existed a material question of fact on the issue of whether Ahern had authorized Heflin, either implicitly or explicitly, to sign the Guaranty on his behalf.

The trial court entered an order granting Ahern and Heflin's motions for summary judgment, and denying CCP's motions for

summary judgment as to all defendants. CCP now appeals the trial court's grant of summary judgment to Ahern and Heflin and its denial of CCP's motion for summary judgment as to Heflin.

1. The Statute of Frauds requires that, to be enforceable, a promise to answer for another's debt "must be in writing and signed by the party to be charged therewith." OCGA § 13-5-30 (2). "This requirement has been interpreted to mandate further that a guaranty identify the debt, the principal debtor, the promisor, and the promisee." (Citations omitted.) *John Deere Co. v. Haralson*, 278 Ga. 192, 193 (599 SE2d 164) (2004).

Here, the trial court found that the Guaranty failed to satisfy the Statute of Frauds because it "omitted the name" of the principal debtor. Ahern and Heflin assert that this finding must be affirmed because the Guaranty neither defined Quality Printing as the "principal debtor" nor contained an express statement that Ahern and Heflin were guaranteeing the debt of Quality Printing, specifically. Put another way, Ahern and Heflin claim that the Guaranty's use of the terms "customer" and "Purchaser" to identify the principal debtor fails to satisfy the Statute of Frauds, because it does not sufficiently identify Quality Printing, by name, as the customer or the Purchaser. We disagree.

The majority of cases relied on by Ahern and Heflin have found a guaranty unenforceable for failure to identify the principal debtor where the name of the principal debtor was omitted entirely from the guaranty — i.e., the principal debtor's name appeared nowhere in that document. See *Industrial Mechanical v. Siemens Energy & Automation*, 230 Ga. App. 1, 2-3 (495 SE2d 103) (1997) (alleged guaranty failed to identify any third party whose debts the purported guarantor would be guaranteeing); *Ellis v. Curtis-Toledo, Inc.*, 204 Ga. App. 704, 705 (2) (420 SE2d 756) (1992) (noting that the guaranty agreement "left blank" the name of the principal debtor); *Northside Bldg. Supply Co. v. Foures*, 201 Ga. App. 259, 259-260 (411 SE2d 87) (1991) (same); *Builder's Supply Corp. v. Taylor*, 164 Ga. App. 127 (296 SE2d 417) (1982) (affirming a directed verdict in favor of defendants where "the name of the principal debtor to whom plaintiff extended credit was entirely omitted from the contract of guaranty") (punctuation omitted). None of these cases, however, requires that a guaranty specifically denominate a party as the "principal debtor," and we decline to create such a requirement.

As the Supreme Court of Georgia has explained, the Statute of Frauds does not mandate "that [a written guaranty] must be of a certain type or form." *John Deere Co. v. Haralson*, supra, 278 Ga. at 194 (holding that a guarantor's signature is sufficient to identify him as such for the purpose of the Statute of Frauds, and that he need not be identified separately in the document as the "guarantor"). See

also OCGA § 10-7-4 ("The form of the contract is immaterial, provided the fact of suretyship exists."). Rather, to satisfy the Statute of Frauds, the document must sufficiently identify the party whose debts are being guaranteed. See *Roach v. C. L. Wigington Enterprises*, 246 Ga. App. 36, 37 (539 SE2d 543) (2000). Here, that party was identified as the "customer" to whom CCP was extending credit. The question, therefore, is whether the credit application identifies that "customer" as Quality Printing.

Ahern and Heflin argue that the Guaranty is ambiguous because the term "customer" could refer to either Quality Printing or to Ahern and Heflin individually. We disagree.

As a threshold matter, we note that any ambiguity as to whom the term "customer" refers is resolved by the admissions of Ahern, Heflin, and Quality Printing that Quality Printing was the customer to whom CCP was extending credit, and therefore the party whose debts Ahern and Heflin were guaranteeing.[1] The trial court apparently refused to consider these admissions, finding that any such parol evidence was barred by the Statute of Frauds. This view, however, fails to recognize that the Statute of Frauds prohibits only the admission of parol evidence that would "add to, take from, or vary a written contract." OCGA § 13-2-2 (1); see also OCGA § 24-6-1. Thus, if the Guaranty in fact failed to identify the principal debtor, either as the "customer" or otherwise, parol evidence would be inadmissible to supply that identification. See *Workman v. Sysco Food Svcs. of Atlanta*, 236 Ga. App. 784 (513 SE2d 523) (1999); *Sysco Food Svcs. v. Coleman*, 227 Ga. App. 460 (489 SE2d 568) (1997). "But while the Statute of Frauds prohibits using parol evidence to supply completely missing terms, it does not prohibit using parol evidence to explain ambiguities in descriptions." (Citation omitted.) *L. Henry Enterprises, Ltd. v. Verifone, Inc.*, 273 Ga. App. 195, 198 (2) (614 SE2d 841) (2005). See also *Arnold v. Indcon, L.P.*, 219 Ga. App. 813, 813-814 (1) (466 SE2d 684) (1996) (where surety guaranteed payments under a lease, any ambiguity as to what lease the guaranty referenced was resolved by the surety's deposition testimony identifying the lease he intended to guarantee); *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452 (471 SE2d 537) (1996). Thus, because the contract identifies the principal debtor as the "customer," parol evidence is admissible to help explain any ambiguity as to whom that term refers. Id. See also *John Deere Co.*, supra, 278 Ga. at 194.

---

[1] Indeed, Ahern and Heflin's Statute of Frauds defense is premised entirely on the presumption that Quality Printing was the customer whose debts they were guaranteeing; the Statute of Frauds would be inapplicable to Ahern and Heflin's promise to pay their own debts.

More importantly, however, we find that no ambiguity exists as to the identity of the "customer" referenced in the Guaranty. "The existence or non-existence of ambiguity in a contract is a question of law for the court." (Footnote omitted.) *Snipes v. Marcene P. Powell & Assoc.*, 273 Ga. App. 814, 816 (1) (a) (616 SE2d 152) (2005). Ambiguity exists where the words used in the contract leave the intent of the parties in question — i.e., that intent is uncertain, unclear, or is "open to various interpretations." (Punctuation and footnote omitted.) *Investment Properties Co. v. Watson*, 278 Ga. App. 81, 83 (1) (628 SE2d 155) (2006). Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is "capable of only one reasonable interpretation." (Punctuation and footnote omitted.) *Quality Foods v. Smithberg*, 288 Ga. App. 47, 51 (1) (653 SE2d 486) (2007). See also OCGA § 13-2-2. Such is the case here.

As Ahern and Heflin acknowledge, the customer whose debts are being guaranteed can only be either Quality Printing or Ahern and Heflin individually, based on the appearance of their names in the box captioned "CUSTOMER." Logically, it would be unnecessary for Ahern and Heflin to personally guarantee their own debt. The only reasonable interpretation of the Guaranty, therefore, is that the term "customer" refers to Quality Printing, thereby identifying that entity as the principal debtor. See *L. Henry Enterprises v. Verifone*, supra, 273 Ga. App. at 198; *Cohen v. Capco Sportswear*, 225 Ga. App. 211, 212 (1) (483 SE2d 634) (1997).

This conclusion is reinforced by the fact that Quality Printing's corporate address, telephone and fax numbers, and Federal Employer Identification Number are listed in response to the questions contained in the "customer" box found on the front side of the credit application. The credit application also required the "customer" to identify itself as either a corporation, partnership, sole proprietorship, or an LLC, and to list the names of its "officers or owners." In response, the "customer" identified itself as a partnership and listed Ahern and Heflin as the sole owners thereof.

Ahern and Heflin argue, however, that even if no ambiguity exists as to the identity of the "customer," such an ambiguity is created by the Guaranty's incorporation by reference of paragraph 27 of the "Terms and Conditions" found on the reverse side of the credit application, under which the guarantors agree to be jointly and severally liable with the "Purchaser as indicated on the front of this application." Ahern and Heflin reason that there is no indication in the credit application that the "Purchaser" referenced in paragraph 27 is the "customer" referred to in the Guaranty. Affording the words "customer" and "purchaser" their "usual and com-

mon signification," as we are required to do (see OCGA § 13-2-2 (2)), we find no ambiguity.

This Court has long recognized that "dictionaries may supply the plain and ordinary [meaning] of a word." (Citation omitted.) *Megel v. Donaldson*, 288 Ga. App. 510, 513 (1) (654 SE2d 656) (2007). The Oxford English Dictionary defines "customer" as "one who purchases from a particular tradesman; a buyer, purchaser," and defines "purchaser" as "one who purchases for money; a buyer." The Compact Oxford English Dictionary, 379, 1471 (2d ed. 1991). Given that a customer is, by definition, synonymous with a purchaser, the only logical interpretation of the Guaranty is that the phrase "Purchaser as indicated on the front of this application" refers to the "customer" identified thereon — i.e., to Quality Printing.

Ahern and Heflin nevertheless attempt to avoid this conclusion by arguing that guaranties are somehow exempt from the normal rules of contract construction. They base this argument on OCGA § 10-7-3 and cases citing that statutory provision, which provides that "[t]he contract of suretyship is one of strict law; and the surety's liability will not be extended by implication or interpretation." This language, however, addresses the scope of a guarantor's obligation, rather than the question of whether that obligation exists. In other words, it requires a court to honor the limits placed on a surety's obligation by the parties' contract, and prohibits a court from expanding the surety's liability by "implication or interpretation." See, e.g., *Roswell Festival, LLLP v. Athens Intl., Inc.*, 259 Ga. App. 445, 448 (576 SE2d 908) (2003) (court could not interpret the prerequisites to the surety's liability, listed in the guaranty, so as to expand that liability). The statute has never been employed, however, to bar courts from applying the normal rules of contract construction in determining whether a contract satisfies the Statute of Frauds. See *Growth Properties of Florida, Ltd., IV v. Wallace*, 168 Ga. App. 893, 896 (1) (310 SE2d 715) (1983) (a guaranty is valid if the essential elements of the contract can be found by applying the ordinary rules of contract construction to interpret its contents); see also *John Deere Co.*, supra, 278 Ga. at 194; *L. Henry Enterprises*, supra, 273 Ga. App. at 198.

In light of the foregoing, we find that the Guaranty adequately identifies the principal debtor and satisfies the Statute of Frauds, and that the trial court erred in holding otherwise.

2. The trial court also found that Ahern's signature on the credit application was a forgery, thereby making the Guaranty unenforceable against him, even if it was otherwise valid and that Ahern had not authorized anyone to sign his name. This holding, however, ignores evidence which demonstrates the existence of a jury question

as to: (1) whether it was Heflin who signed Ahern's name on the credit application; and, if so (2) whether Ahern, by his conduct, clothed Heflin with the apparent authority to do so. We therefore reverse the trial court's grant of summary judgment in favor of Ahern.

The evidence supporting the contention that it was Heflin who signed Ahern's name to the credit application includes the document itself, which the jury could examine for similarities between Heflin's signature and the signature purporting to be Ahern's. Even to the untrained eye, those signatures appear to be quite similar. The circumstances under which the credit application was received also support the conclusion that Heflin placed Ahern's signature thereon. Elaine Tennant, CCP's credit manager, averred that she spoke directly to Heflin regarding the need for both partners to sign the personal guaranty, faxed Heflin a second credit application, and Heflin faxed back the completed form. Finally, Ahern stated in his affidavit that: "When I learned of the forgery of my name and the unauthorized use of my signature stamp in September of 2005, I moved to end all business association with Todd Heflin." This testimony indicates that Ahern doubts Heflin's veracity and believes that Heflin signed his name to the application. Based on the foregoing, a jury question exists as to whether Heflin signed Ahern's name to the credit application.

We also find that there exists a factual question as to whether the doctrine of apparent agency should apply to bar Ahern from denying liability on the personal guaranty. Before analyzing this question, however, we first address the dissent's eleventh hour assertion that the issue of apparent agency was not raised on appeal. The mere fact that the words "apparent agency" were not specifically mentioned in a separate enumeration of error, however, does not prohibit us from considering the question in determining whether the trial court erred in granting summary judgment to Ahern. See, e.g., *Mills v. Norfolk Southern R. Co.*, 242 Ga. App. 324, 331 (526 SE2d 585) (2000). Rather, "[w]here it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from or what errors are sought to be asserted upon appeal, the appeal *shall* be considered in accordance therewith. . . ." (Emphasis supplied.) OCGA § 5-6-48 (f). See also *Felix v. State*, 271 Ga. 534, 534-535 (523 SE2d 1) (1999) (Noting that the purpose of OCGA § 5-6-48 (f) was "to secure speedy and uniform justice in a uniform and well-ordered manner; not to set traps and pitfalls by way of technicalities for unwary litigants.") (citation and punctuation omitted).

Here, the issue of apparent authority was passed upon by the trial court, which found that Ahern had not authorized anyone to sign the credit application on his behalf. On appeal, Ahern contends that he is entitled to summary judgment because CCP failed to come forward with evidence showing that his signature was not a forgery. As is demonstrated below, however, the record is replete with CCP's evidence showing the conduct of Ahern that would have led CCP to reasonably believe that Ahern had given Heflin, as his partner and apparent agent, signature authority. This evidence, in turn, gives rise to a jury question on whether Ahern did, in fact, clothe Heflin with such apparent authority.

"[T]he doctrine of apparent agency is predicated on principles of estoppel" (*Brown v. Coastal Emergency Svcs.*, 181 Ga. App. 893, 897 (3) (354 SE2d 632) (1987)), and its applicability, therefore, is determined by examining both the conduct of the alleged principal and the detrimental reliance on that conduct by the third party asserting the doctrine. See *R. W. Holdco, Inc. v. Johnson*, 267 Ga. App. 859, 864 (1) (a) (601 SE2d 177) (2004) ("Apparent authority is that which the principal's conduct leads a third party reasonably to believe the agent has; it creates an estoppel allowing third parties to bind a principal to the agent's acts on account of the principal's conduct, reasonably construed by third parties acting in innocent reliance thereon.") (citation and punctuation omitted). The acts of the agent which create apparent authority may include "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." (Citations and puntuation omitted.) *Intl. Indem. Co. v. Odom*, 174 Ga. App. 6, 7 (2) (329 SE2d 307) (1985). While a finding of apparent agency "cannot be based upon the assumption that an agency relationship exists" (*Ashburn Health Care Center v. Poole*, 286 Ga. App. 24, 25-26 (648 SE2d 430) (2007) (citations omitted)), the conduct giving rise to apparent agency "may be proved, as any other fact, by circumstantial evidence . . . [including] proof of circumstances, apparent relations, and the conduct of the parties." (Citations and punctuation omitted.) *Arrington & Blount Ford, Inc. v. Jinks*, 154 Ga. App. 785, 786-787 (1) (270 SE2d 27) (1980). Such evidence must show that the principal either "intend[ed] to cause the third person to believe that the agent [was] authorized to act for him, or he should [have] realize[d] that his conduct [was] likely to create such belief." Restatement 2d Agency § 27 (2004), comment c. See also id. at § 8B (noting that a principal may be estopped from denying agency where his intentional or careless conduct causes a third party to believe that "the transaction was entered into by or for him").

Here, the trial court's grant of summary judgment to Ahern was based upon the affidavit of Ahern, in which he stated that some other person had signed his name to the credit application without his knowledge or authority and that he was unaware of CCP's policy requiring personal guaranties "before performing work for a customer." Neither the issue of whether Ahern had actually given Heflin the authority to sign his name, nor whether he was aware that Heflin had signed his name, however, is relevant to the question of whether the doctrine of apparent authority should apply to estop Ahern from denying liability. Rather, the question is whether the evidence establishes conduct by Ahern that could be reasonably interpreted by CCP that Ahern had permitted Heflin to execute the credit application, including the personal guaranty, on his behalf.

The dissent finds no such conduct, concluding as a matter of law that CCP merely assumed that Heflin had the authority to sign Ahern's name to the guaranty. The record, however, demonstrates the existence of a jury question as to whether any such "assumption" by CCP was caused by Ahern's own actions.

The issue of Ahern's liability turns on several factual questions. The first is whether Ahern was aware that CCP would not perform services for Quality Printing unless and until it had received a personal guaranty from both partners. The evidence presented demonstrates a genuine factual dispute as to whether Ahern had such knowledge. Specifically, there is evidence which contradicts Ahern's affidavit testimony that he was unaware of the personal guaranty requirement, including: (1) the February 18 e-mail between Ahern and an employee of CCP, in which Ahern states that "Elaine [Tennant] is faxing me the credit application right now" and in which he confirms a quote of approximately $76,000 for services to be performed by Capital Color for Quality Printing; (2) the affidavit testimony of Tennant, that she spoke with Ahern on that same day regarding the credit application, and explained to him that both he and Heflin would have to sign the personal guaranty on that application before the requested work could be performed; and (3) the fact that Tennant placed a handwritten note on the credit application which she faxed to Ahern, that pointed to both the signature line for "customer" and the signature line for "guarantor," and stated "must sign both places."

Should a jury conclude that Ahern was aware of the personal guaranty requirement, it would also need to determine whether, in light of this knowledge, Ahern acted in such a way as to lead CCP to reasonably believe that Heflin had the authority to execute that guaranty on his behalf. Again, we find that CCP is entitled to have this question decided by a jury.

Evidence which would support such a reasonable belief by CCP includes the credit application which Tennant claims to have faxed directly to Ahern, which Ahern's e-mail acknowledges he was to receive, and which included handwritten notations from Tennant, calling attention to the fact that the personal guaranty contained on the application. It is that application, containing Tennant's handwritten notes, which was initially faxed back to Tennant by Heflin. From CCP's perspective, this fact further indicated that Ahern had given the application to Heflin, as his partner, and that Heflin completed and executed the same.

Additionally, the record shows that Ahern admitted that he knew that CCP began performing work for Quality Printing after CCP had allegedly made him aware that CCP required his personal guaranty as a condition precedent of rendering such services. Despite this knowledge, there is no evidence that Ahern made any effort to contact CCP, either to inquire as to whether it had waived the requirement or to inform it that he had neither signed the guaranty nor authorized someone to sign for him.

This evidence raises a jury question as to whether CCP acted reasonably in interpreting Ahern's conduct as granting Heflin the authority to complete and execute the credit application on his behalf, including the personal guaranty. In reaching this conclusion, we note that the result in this case depends almost entirely upon the credibility of the witnesses, and is therefore best evaluated by a jury. "In motions for summary judgment, this court cannot consider the credibility of witnesses or their affidavits and a jury must resolve the question and the conflicts in the evidence which it produces. [Cit.]" *Miller v. Douglas*, 235 Ga. 222, 223 (219 SE2d 144) (1975). We also emphasize our obligation to afford CCP the benefit of all reasonable doubt, and note that all of the evidence, and any inferences and conclusions that can be drawn therefrom, must be construed most favorably toward CCP and against Ahern. *Goobich v. Waters*, 283 Ga. App. 53, 58 (640 SE2d 606) (2006).

The dissent places great emphasis on the fact that the alleged forgery by Heflin was on a personal guaranty, as opposed to one for the partnership. We note, however, that the doctrine of apparent agency applies "even though the agent, in contracting, acts in his own interests and adversely to his principal," the rationale being that "[t]he principal, having selected the representative and vested him with apparent authority, should be the loser in such case, and not the innocent party who relied thereon." (Citation omitted.) *Speed v. Muhanna*, 274 Ga. App. 899, 903 (1) (619 SE2d 324) (2005). Accordingly, courts have applied the doctrine to render a principal liable on a personal guaranty executed by an apparent agent. See *Leasetec Corp. v. Orient Systems*, 85 FSupp.2d 1310, 1319 (S.D.

Fla. 1999). See also *Gleason v. Seaboard Air Line R. Co.*, 278 U. S. 349 (49 SC 161, 73 LE 415) (1929) (Where an agent, acting with apparent authority, commits a fraud against a third party who reasonably believed that he was entering into a bona fide transaction with the agent's principal, the principal may be charged with the fraud.).

In light of the foregoing, the strident tone of the dissent's closing paragraph is, at best, puzzling. We fail to see how a fact-intensive case such as this, which hinges almost entirely on the credibility of witnesses, will open the "floodgates of litigation" to cases asserting apparent authority. Nor do we understand how granting a litigant the fundamental, constitutional right to a jury trial on this issue undermines the current law on apparent authority — law which our analysis applies. Finally, the dissent's hyperbolic assertion that our decision will "automatically subject business partners to individual liability" any time their partner forges their signature is simply untrue. Indeed, even Ahern has not yet been subjected to such liability, and he very well might not be. Moreover, any such liability of Ahern would not be based on Heflin's forgery of his signature, but rather on the conduct of Ahern himself in dealing with CCP.

For the reasons set forth above, we reverse the trial court's order granting summary judgment in favor of Ahern and Heflin and find that CCP is entitled to summary judgment against Heflin on the issue of his liability to CCP for printing services rendered to Quality Printing.

*Judgment reversed. Barnes, C. J., Ellington and Adams, JJ., concur. Andrews, P. J., Johnson, P. J., and Smith, P. J., concur in part and dissent in part.*

SMITH, Presiding Judge, concurring in part and dissenting in part.

While I fully concur with Division 1 of the majority, I respectfully dissent to the holding in Division 2 that a material issue of fact exists as to whether Heflin signed Ahern's name with Ahern's apparent authority, for two reasons. First, the apparent authority doctrine should not be used to reverse in this case because the trial court's ruling on this issue was not enumerated as error or addressed by any of the parties in their briefs to this court before our initial opinion was issued. Second, no genuine issue of material fact exists as to whether Heflin signed Ahern's name with apparent authority.

1. In its appeal, Capital Color Printing, Inc. ("Capital Color") asserts that the trial court erred by granting summary judgment in Ahern's favor because the trial court erroneously concluded that no genuine issue of material fact existed as to the authenticity of Ahern's signature. Capital Color asserts that a jury issue exists as to

whether Ahern signed his own name, not whether Heflin had apparent authority to sign Ahern's name.

Although the issues of apparent authority and ratification were raised below and ruled upon by the trial court, we cannot consider them on appeal because Capital Color failed to argue on appeal that the trial court erred by ruling that these doctrines do not apply in this case. Summary judgment rulings not enumerated as error on appeal or addressed in an appellant's brief cannot be considered on appeal. See *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 401 (2) (526 SE2d 82) (1999); *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 636 (6), n. 5 (466 SE2d 872) (1995); *Bill Parker & Assoc. v. Rahr*, 216 Ga. App. 838, 840 (2) (456 SE2d 221) (1995).[2] As a result, I would grant Ahern's motion for reconsideration to address only the issue raised on appeal by Capital Color and find that the trial court did not err by granting summary judgment in favor of Ahern.

The record shows that Ahern averred that he did not sign the personal guarantee and that his signature was forged. The only evidence Capital Color points to on appeal to create an alleged issue of material fact on this issue is a document titled "verification" that Capital Color claims verified the allegation in its complaint that Ahern "personally guaranteed the debt."

This argument lacks merit for two reasons. First, the document does not verify the statements made in Capital Color's complaint. Instead, it verifies the information contained in the verification document itself and Exhibit "B" to the verification document, which is a list of the amount owed to Capital Color by Quality Printing. Second, even if the document somehow did verify the complaint, the statement in the complaint that "Ahern personally guaranteed the debt" does not provide competent evidence that Ahern's signature was authentic. Self-serving, conclusory statements that are not supported by facts, even if sworn, are not sufficient to create a genuine issue of material fact. See *Sherrill v. Stockel*, 252 Ga. App. 276, 278 (557 SE2d 8) (2001).

---

[2] The authorities cited by the majority in support of its contention that this court can consider the issue of apparent authority are inapposite. In *Mills v. Norfolk Southern R. Co.*, 242 Ga. App. 324, 331 (4) (a) (526 SE2d 585) (2000) (full concurrence in Division 4), we merely held that we have discretion to address an issue actually raised in a party's brief on appeal, but not enumerated separately as error. In this case, Capital Color does not argue apparent authority anywhere in its brief before this court.

The majority cites OCGA § 5-6-48 (f) as authority for addressing the apparent authority issue. That Code section provides in part that when it is clear what judgments were appealed from or what errors are sought to be asserted on appeal, an appeal should be considered even though the enumeration of errors failed to clearly enumerate the error sought to be reviewed. Id. Here, it is clear from Capital Color's brief that it makes no argument whatsoever concerning apparent authority.

Although the issue of apparent authority is not before us, it is addressed in the majority opinion, and I therefore must address it. I disagree with the majority's conclusion that a genuine issue of material fact exists as to whether Heflin signed Ahern's name on an individual guarantee with apparent authority.

The "doctrine of apparent authority is based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss." (Citations and punctuation omitted.) *Turnipseed v. Jaje*, 267 Ga. 320, 323 (2) (a) (477 SE2d 101) (1996).

> Apparent authority is that which the principal's conduct leads a third party reasonably to believe the agent has; it creates an estoppel allowing third parties to bind a principal to the agent's acts on account of the principal's conduct, reasonably construed by third parties acting in innocent reliance thereon. *Where there were no manifestations of authority by the principal to a third party, apparent authority is not in issue.*

(Citations and punctuation omitted; emphasis supplied.) *Gosule v. Bestco, Inc.*, 227 Ga. App. 863, 864 (1) (490 SE2d 532) (1997).

"[I]t is the principal's conduct that is crucial to the creation of apparent or ostensible authority." *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.*, 92 FSupp.2d 1342, 1351 (II) (N.D. Ga. 1998). "In other words, apparent authority is not predicated on whatever a third party chooses to think an agent has the right to do, or even upon what the agent says he can do, but must be based on acts of the principal which have led the third party to believe reasonably the agent [has] such authority." (Citations and punctuation omitted.) *Holy Fellowship Church of God in Christ v. Brittain*, 240 Ga. App. 436, 438 (1) (523 SE2d 93) (1999).

In this case, there is no evidence showing that Ahern acted in any way that could lead Capital Color to believe reasonably that his business partner had the authority to sign an *individual* guarantee on Ahern's behalf. Indeed, there is no evidence that Capital Color even knew at the time that Heflin signed Ahern's name. As a result, Capital Color cannot demonstrate two of the required elements for application of the apparent authority doctrine: (1) that it knew Heflin was acting as Ahern's agent when he allegedly signed Ahern's name; and (2) that Ahern led it to believe that Heflin had authority to sign his name to an individual guarantee.

While a genuine issue of material fact exists as to whether Ahern

knew that Capital Color required an individual guarantee from both partners,[3] this issue of fact cannot be converted into an issue of fact as to whether Ahern acted in a manner that could lead Capital Color to believe that his business partner had the power to bind him to an individual guarantee. Even if we assume for purposes of summary judgment that Ahern did know that Capital Color required individual guarantees, there is simply no evidence showing that he acted in any manner in his relations with Capital Color that would allow it to reasonably conclude that his business partner was authorized to sign his name to an individual guarantee. See *Addley v. Beizer*, 205 Ga. App. 714, 721 (423 SE2d 398) (1992) (on motion for reconsideration) (finding alleged principals entitled to directed verdict in their favor on personal guarantee despite their knowledge that third party was requesting personal guarantee). It simply defies logic to conclude that Ahern led Capital Color to believe that Heflin could sign Ahern's name to an individual guarantee when Capital Color was not even aware that Heflin might have done so.

A review of Georgia law on apparent authority demonstrates that parties cannot survive summary judgment on an apparent authority issue without pointing to specific acts by the principal creating such authority. *Bresnahan v. Lighthouse Mission*, 230 Ga. App. 389, 391 (1) (496 SE2d 351) (1998) (summary judgment in favor of principal when evidence undisputed that principal never held out alleged agent "as anyone who, on her sole signature, could bind the corporation"); *Fed. Paper Bd. Co.*, supra, 92 FSupp.2d at 1352 (II) (summary judgment in favor of principal when plaintiff failed to "point to any affirmative act on the part of defendant creating the impression that [alleged agent] had . . . authority to single-handedly bind the defendant"); *Holy Fellowship*, supra, 240 Ga. App. at 438 (1) (summary judgment granted when third party did not assert any act or statement by principal that would cause third party to believe that an alleged agent had authority to make the agreement); *Gosule*, supra, 227 Ga. App. at 865 (1) (summary judgment granted because plaintiff failed to show that principal demonstrated to him that alleged agent had authority to act as he did); *Kinard v. Nat. Indem. Co.*, 225 Ga. App. 176, 178-179 (1) (483 SE2d 664) (1997) (summary judgment granted because no evidence insurance company held independent insurance agent out as its agent with

---

[3] Ahern asserted in interrogatory responses that "it was not [his] business practice to ever extend a personal guarantee on any application for credit." He also averred in an affidavit that he "was unaware that Plaintiff required personal guarantees before performing work for customers" until he was served with the lawsuit in this case. A representative of Capital Color submitted an affidavit in which she claimed that she told Ahern in a telephone call that both owners of Quality Printing 4 Less "would have to execute personal guarantees before Capital would do business with Quality."

authority to bind coverage). These cases demonstrate that Georgia courts strictly adhere to the requirements for application of the apparent authority doctrine. In sum,

> [w]here the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he or she was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such agency exists.

(Citation, punctuation and footnote omitted.) *Ellis v. Fuller*, 282 Ga. App. 307, 309 (1) (638 SE2d 433) (2006).

For all these reasons, the trial court's grant of summary judgment to Ahern should be affirmed. The issue of apparent authority is not before us, and there is no genuine issue of fact with regard to the issue that is before us, the authenticity of Ahern's signature on the guarantee. The approach advocated by the majority to find a genuine issue of fact on the issue of apparent authority in this case will unsettle well-established apparent authority law. I therefore respectfully dissent to Division 2 of the majority opinion.

I am authorized to state that Presiding Judge Andrews and Presiding Judge Johnson join in this opinion.

DECIDED MARCH 25, 2008 —
RECONSIDERATION DENIED APRIL 14, 2008 ▪▪▪▪▪▪

*Janis L. Rosser*, for appellant.

*Pankey & Horlock, Larry A. Pankey, Deming, Parker, Hoffman, Green, Campbell & Daly, Frank F. Pape, Jr., Conaway & Strickler, Dylan E. Wilbanks*, for appellees.